J. L. JONES v. MANFRED CALL and R. W. GLENN.

*Reference—Proximate and Remote Damages.*

1. This Court cannot consider exceptions to the findings of a referee which depend upon the evidence, when no evidence is sent up with the transcript.

2. Where the plaintiff's business has been broken up by the wrongful act of the defendant, he can recover in damages the profits on contracts which were actually made, and which he was prevented from completing by such wrongful act, but he cannot recover the possible profits which his business would have yielded if not interfered with, as this damage is speculative and remote.

3. So where the plaintiff was a manufacturer of patent tobacco machines and was stopped from such manufacture by the wrongful act of the defendant, and at the time of such stoppage the plaintiff had contracts for machines which would have yielded a profit of $1,700, and the referee found that the business which was broken up was worth $6,000 a year; *It was held,* that the measure of damages was the profit on the machines contracted for, and the estimated profit of the business was too speculative and remote to constitute the measure of damages.

(*Oldham* v. *Kerchner,* 79 N. C., 106; *Lewis* v. *Rountree,* 79 N. C., 122; *Mace* v. *Ramsey,* 74 N. C., 11; distinguished and approved; *Clements* v. *The State,* 77 N. C., 142, doubted).

CIVIL ACTION, heard before *Clark, Judge,* on exceptions to the report of a referee, at February Term, 1886, of GUILFORD Superior Court.

At the December Term, 1880, of the Superior Court of Guilford county, this action was referred to James W. Reid, Esq., to state an account between the parties and report the evidence, his findings of facts and conclusions of law. The referee filed his report, to which exceptions were filed by the plaintiff and by each of the defendants. At Fall Term, 1883, the case was heard before *MacRae, Judge,* upon the

22

exceptions of the plaintiff and the defendant Glenn, the defendant Call having withdrawn his exceptions and moved for a confirmation of the report of the referee. His Honor gave judgment sustaining the 9th and 10th exceptions of the plaintiff, and the 2d and 3d exceptions of the defendant Glenn, and also the 5th exception as to the measure of damages, and, among other things, adjudged that the cause be re-referred to James W. Reid, Esq., to reform his report, and he was directed, in estimating the damages to the said Jones and Glenn, to consider the loss of profit on the manufacture and sale of machines, on the basis of a continued manufacture and sale, at the time of the interference as set out in finding 17, and also the difference between the market value of said patents at the time of said interference, and at the time of making his report, if he shall find that the difference in value, if any, was caused by said interference.

From this order the defendant Call appealed to the Supreme Court. As the order was interlocutory, and the exceptions to the rulings of the Court embraced in it could be considered after the coming in of the corrected report, if necessary, the appeal was dismissed as premature; 89 N. C., 188.

The referee filed his report to the Fall Term, 1885, as follows:

" I. That in addition to the seventeenth finding of my said former report, I find that by reason of the doings and unlawful interference of the defendant Call, in interfering with and stopping the manufacture of the machines, the sales thereof were withdrawn from market, and other patents and contrivances for the manufacture of tobacco supplanted the Jones patents, and greatly depreciated their value.

II. That the market value of the said patents at the time of the said interference, to-wit: October 11th, 1878, was forty thousand dollars, and the market value thereof at the time

of making my former report, had depreciated two thirds, leaving the said patents worth the sum of thirteen thousand three hundred and thirty-three and $33\frac{1}{3}$-100 dollars.

III. That the *annual* profit derived from the manufacture and sale of machines at the time of the interference on October 11th, 1878, was six thousand dollars.

As conclusions of law, the referee ruled:

"*x*. That under finding 17 of my former report and finding "I," foregoing, the contracts between the plaintiff and defendants' intestate, R. W. Glenn, and defendant Call, were rescinded by the said action of defendant Call, and the said plaintiff and defendant Glenn are entitled to be put in *statu quo*.

"*y*. That the plaintiff and defendant Glenn are entitled to the sum of six thousand dollars per annum, as damages, from October 11th, 1878, to March 5th, 1883, the annual profit derived from the manufacture and sale of machines, with interest thereon from March 5th, 1883.

"*z*. That the plaintiff and defendant Glenn are entitled to twenty-six thousand six hundred and sixty-six and $66\frac{2}{3}$-100 dollars, as damages, for difference between market value of the said patents at the time of said interference, October 11th, 1878, and the time of making the former report, on March 5th, 1883."

Accompanying the report is the following account, based upon the former report and this amended report:

---

JONES *v.* CALL.

---

"JOHN L. JONES AND DEFENDANT GLENN,
                IN ACCOUNT WITH MANFRED CALL:

| | | |
|---|---|---:|
| 1878. | | |
| Oct. 11th. | To balance due Manfred Call this day as per former report......... | $11,072 52 |
| | To interest on same to March 5th, 1883, 4 y'rs, 4 mos. and 24 days.. | 2,923 14 |
| 1879. | | |
| May 22d. | To amount paid for taxes.......... | 29 25 |
| | To interest to March 5, 1883, 3 y'rs, 9 months and 13 days........... | 6 63 |
| May 22d. | To repairs on fence............... | 14 16 |
| | To interest to March 5, 1883........ | 3 21 |
| Nov. 5th. | To amount paid for insurance.... | 200 00 |
| | To interest on same to March 5th, 1883 ...................... | 39 80 |
| | | $14,288 71 |

| | | | |
|---|---|---:|---:|
| 1883. | CREDIT. | | |
| March 5th. | By difference in market value of the said patents at the time of said interference and this date due to the plaintiff Jones and defendant Glenn, as damages...... | $26,666 66⅔ | |
| March 5th. | By annual loss of profit on manufacture and sale of machines from Oct. 11, 1878, to date, 4 years, 4 months and 24 days, at $6,000.00 per annum........... | 26,399 84 | |
| | By Balance....................... | | 38,777 79⅔ |
| | | $53,066 50⅔ | $53,066 50⅔ |

| | | |
|---|---|---:|
| 1883. | | |
| March 5th. | Balance due plaintiff, J. L. Jones, and defendant Glenn, subject to a note of $5,000.00 due Bank of Greensboro, with interest as specified therein from Sept. 16th, 1878, till paid, with interest thereon from this date.......... | $38,777 79⅔ |

August 31st, 1885."

The defendant Call filed exceptions to each of the findings of fact, I, II and III, in the second report, as not warranted by the facts, and also to each of the referee's conclusions of law, $x$, $y$ and $z$, as erroneous in law, and not supported by the facts, and also to the account filed, as based upon errone-ous findings of facts and conclusions of law.

The defendant Call also filed as exceptions to the whole report, as amended, the exceptions filed to the original report, and which had been withdrawn by him when his motion was made for the confirmation of that report.

The action was tried before Clark, Judge, at the February Term, 1886, upon the report of the referee and the exceptions of the defendant Call, and all the exceptions filed to the original report of the referee were overruled, "for that the matter thereof had been adjudicated by Judge MacRae, and the exceptions had been heretofore offered by the defendant Call and withdrawn," and all the exceptions, inclu-ding questions of fact and conclusions of law, arising on the amended report, were overruled, and judgment rendered against the defendant Call and in favor of the plaintiff Jones, and the defendant Glenn, among other things, for the sum of $30,827.59.

From this judgment the defendant Call appealed, assigning as errors:

1st. The exceptions taken to the rulings and judgment of the Court at Fall Term, 1883.

2d. The rulings and judgment of the Court at February Term, 1886; first, in refusing to consider the exceptions filed to the first report of the referee; second, in overruling the exceptions to the findings of fact by the referee in his sec-ond report; third, in refusing to consider the exceptions to the referee's conclusions of law, $x$, $y$ and $z$, and the account as stated, because they were involved in the former adjudi-cation made by Judge MacRae.

3d. In confirming the report of the referee and granting the judgment thereon in favor of plaintiff Jones and defendant Glenn.

*Mr. John W. Graham,* for the plaintiff.

*Messrs. J. A. Barringer, L. M. Scott* and *Walter Caldwell,* filed a brief for the defendant Call.

*Mr. John Devereux, Jr., (Mr. J. H. Dillard* was with him,) for the defendant Glenn.

DAVIS, J., (after stating the facts). The evidence is not sent up with the record, and we cannot consider the exceptions to the findings of fact, dependent upon the evidence.

The first exception for our consideration is to the judgment of the Court at Fall Term, 1883, re-referring the report to the referee, with directions, "in estimating the damages to the said Jones and Glenn, to consider the machines on the basis of a continued manufacture and sale, at the time of the interference, as set out in finding 17, and also the difference between the market value of the patents at the time of said interference, and the time of making his report, if he shall find that the difference in value, if any, was caused by said interference."

If there was error in the rule laid down by the Court for the guidance of the referee in this respect, then it must result that there was error in his findings of fact and conclusions of law, predicated upon the erroneous rule.

Finding 17 referred to is as follows:

"17. That the defendant Glenn and the plaintiff Jones complied with the stipulations of their said agreements, and were interfered with and stopped from the prosecution of their business and the manufacture of said machines, wrongfully and without cause, by the defendant, Manfred Call."

The referee finds as a fact, that at the time of interference, they had orders for one hand machine and five power ma-

chines; and that the usual average profits realized by them on a hand machine were $200, and on a power machine $300, and he allows $1,700 damages for the loss by reason of their failure to fill these orders. This loss could be ascertained with reasonable certainty, and was properly allowed, but to consider the loss of profit "on the basis of a continued manufacture and sale," from the time of interference, October 11th, 1878, to March 5th, 1883, is partly speculative. If a proper measure, why stop at the date of the report? Were the services of the parties of no value in other occupations during this long period? and if so, should they be considered? If they were making machines at the time of the interference, as the referee finds, at a profit at the rate of $6,000 per annum, what assurance was there that this would continue, or that they might not make them at a loss of $6,000 the subsequent year? As was said by counsel: "Who knows where they would have stopped, or what misfortune would have befallen them, or what other patents would have superseded this one, or whether they could by any possibility have made the same profits on machines, or would have made any?"

We are referred by counsel for the defendant Glenn, who makes this claim for damages jointly with the plaintiff Jones, to several authorities to sustain the rule of damages insisted upon by them, in which the facts are quite different, and which are distinguishable from this.

In *Masterton* v. *The Mayor of Brooklyn*, 7 Hill, 61, the plaintiffs had contracted. for the price of $271,600, to be paid in divers sums, as the work progressed, to furnish certain marble to build a city hall. The plaintiffs thereupon made a contract with other parties, referring to the one entered into with the defendant, to furnish from their quarry the marble required for the erection of the building, in accordance with the terms agreed upon. They proceeded to deliver a considerable quantity of the marble, when the defendant

refused to receive any more, though the plaintiffs were ready to deliver it and perform their part of the contract. The contract was for the delivery of so much marble, and it was held that the plaintiffs were entitled to damages for the gains or profits which they would have realized from the performance of their contract.

That was a contract depending upon no contingency. It was known just how much marble was to be used; the price was fixed; and the value of the contract was not merely speculative, but capable of being ascertained with reasonable certainty—in fact, in that case, with absolute certainty.

In *Oldham* v. *Kerchner*, 79 N. C., 106, the plaintiffs were to grind a quantity of corn at a stipulated price per bushel, which the defendant contracted to deliver, but which he failed to do. Judge RODMAN, delivering the opinion of a majority of the Court, said : " We think it is now well established, that the profits which the plaintiff would have made, if the contract had been complied with, is the measure of damages for its breach, in cases like this. There are, of course, cases not within the rule, as where the profits are speculative and incapable of accurate ascertainment." That was a special contract by which the defendant agreed to pay eight cents per bushel for grinding the corn, (instead of the usual toll,) which was to be credited to the plaintiff on a debt which he owed the defendant. That case was unlike this, and does not apply, but the rule laid down in his dissenting opinion by the present Chief Justice, if not applicable to the facts of that case, is clearly applicable to this. He says : " Suppose the plaintiff had brought his action at once upon the defendant's repudiation of the contract, the damages, it would seem, must be estimated upon the same principle, as when he waits a year or more before doing it. In such case, the estimate must be purely speculative and conjectural, and the anticipated profits certainly could not be recovered. There are many contingencies attendant

upon all business—the possible loss by fire, the breaking of machinery, death, sickness, and other causes, may interrupt or suspend its prosecution. These cannot be estimated in advance, and profits must be largely dependent upon them. It is for this reason, that the actual, not conjectural loss, constitutes the plaintiff's claim to compensation." We think the authorities cited in the dissenting opinion apply to this case, and are conclusive.

In *Lewis* v. *Rountree*, 79 N. C., 122, the plaintiff contracted with the defendant for a certain number of barrels of rosin at a stipulated price. The defendant had notice that the plaintiff bought to ship and sell in a market other than that of the purchaser. The Court said: "For the purposes of the present question, the contract of the defendant may be regarded as a contract to deliver the rosin at any usual market, to be received by the purchaser, the purchaser taking on himself the risk, trouble and expense of the transportation." The market stated was New York, and it was held that the plaintiff had a right to recover what would have been his profits in New York, if the contract had been complied with. The contract was for a specified number of barrels at a stipulated price, and the measure of the profit or loss was the difference between the price to be paid, and the price at which the plaintiff could have sold in New York, deducting the costs, and this was capable of ascertainment with reasonable certainty, and the damages were not speculative. The same distinction will be found to mark the case of *Mace* v. *Ramsey*, 74 N. C., 11, in regard to the hire of the boat.

Without expressing any opinion as to the correctness of the rule laid down in the case of *Clements* v. *The State*, 77 N. C., 142, as applicable to the facts in that case, we think it has no application to this.

There was error in the rule of damages laid down by the Court, upon which the referee based his amended finding of

damages sustained by the plaintiff and defendant Glenn, by reason of the stoppage of the manufacture and sale of machines. The finding in the original report in this respect was correct, and the defendant's exception must be sustained as to so much of the order of re-reference as directs the referee to consider the loss of profit on the manufacture and sale of machinery, on the basis of a continued manufacture and sale, at the time of interference, as set out in finding 17. This also disposes of and sustains the exception to finding of fact "III," and conclusion of law "V," in the second report of the referee. The additional damages for loss of profits on manufacture and sale of machines from October 11th, 1878, to July 30th, 1883, amounting (as found by the referee) to $26,399.84, must be deducted from the account, and from the judgment, as rendered, for $30,827.59 ($30,827.59—$26,-399.84,) reducing the amount in the judgment to the sum of $4,427.75.

The other exceptions depend upon the findings of facts and the conclusions of law thereon, based upon evidence not excepted to, and which is not before us for review, and we can see no error.

The judgment of the Court below must be modified to conform to this opinion. The costs of appeal must be paid by the plaintiff and defendants equally.

Modified.