PENDER LUMBER COMPANY v. WILMINGTON IRON WORKS.

(Filed June 10, 1902.)

DAMAGES—*Measure of—Contracts—Breach—Negligence.*

> In an action against a machinery company for failure to deliver machinery according to contract, it is liable only for such damages as are caused by the breach as being incidental to the act of omission as a natural consequence and which may be reasonably presumed to have been in contemplation of the parties at the time the contract was made.

FURCHES, C. J., dissenting.

ACTION by the Pender Lumber Company against the Wilmington Iron Works, heard by Judge *Frederick Moore* and a jury, at December (Special) Term, 1901, of the Superior Court of PENDER County. From a judgment for the plaintiff, the defendant appealed.

*Stevens, Beasley & Weeks* and *J. D. Kerr,* for the plaintiff.
*Meares & Ruark* and *J. T. Bland,* for the defendant.

COOK, J.  Plaintiffs were engaged in the manufacture of lumber, strawberry crates, baskets, and other vegetable packages; had made a few crates two years before, and a few the past year; previous to November, 1899, they had made about 6,000 poor crates, but bought the baskets for them.  In 1899 they had contracted with responsible parties to manufacture and deliver to them in the months of February and March, 1900, 25,000 crates at the price of 25 cents per crate.  To comply with their contracts it was necessary for them to have repaired the steel rollers belonging to and a part of their veneering machine, without which they could not comply. During the month of November, 1899, plaintiffs and defendant entered into a contract by the terms of which defendant obligated itself to repair the machinery and fit it for the use

desired.    Plaintiffs contend that defendant agreed to have it
ready in three weeks, and that they informed defendant of
their contract to manufacture the 25,000 crates, and that de-
fendant failed to do the work within the time agreed upon,
and by its repeated and continuing promises to do the work,
upon which they relied, they were induced to wait so long that
they were prevented from having the work done elsewhere,
and the time expired and they were thus prevented from com-
plying with their contracts and had to cancel them and
thereby lost the profit on their contracts; that they were pre-
pared in every other respect to make the crates and were pre-
vented from making them for the want *solely* of the repaired
steel rollers.    With the rollers so repaired the expense of
making the crates would have been twelve cents per crate.
The defendant admitted the contract to repair, but denied
that it agreed to complete the work in three weeks and denied
that it was informed by plaintiffs of their contracts to fill
orders for 25,000 crates, but admitted that the work had never
been completed.    It contended that the contract was made on
November 21st, and that the conversation alleged to have been
had with plaintiffs (and which it denied having had) on the
19th, formed no part of the contract, and that any informa-
tion given it at that time did not affect it with notice and was
not within their contemplation in making the contract on the
21st, and that plaintiffs could not recover for any *loss* of
*profits* because the evidence showing the cost of making the
crates was speculative, remote and incompetent; and that the
loss of such *profits,* if provable, would be a remote and specu-
lative damage, and not such as, being incidental to the breach
of contract, would be the natural consequence thereof and
reasonably presumed to have been within the contemplation
of the parties when the contract was made.    The following
six issues were submitted to the jury—the first five were
answered "Yes," and by the sixth assessed the damages found
due to the plaintiff at $750, viz:

"1. Did the defendant, on the 21st day of November, 1899, enter into a contract with the plaintiffs to alter and repair at the price of sixty dollars the rollers belonging to plaintiff's veneering machine and to deliver the same, rebuilt and repaired, to the plaintiffs within three weeks from the day of the delivery of said rollers to it by the plaintiffs ?"

"2. Were such rollers necessary to plaintiff's veneering machine in preparing the timber of which to manufacture strawberry crates ?"

"3. Was the defendant at the time of making said contract, informed that the plaintiffs had no other machine with which they could prepare veneering for making strawberry crates ?

"4. Was the defendant at the time of making said contract informed that the plaintiffs had received orders for 25,000 crates which they had agreed to manufacture and to deliver in the months of February and March, 1900 ?

"5. Did the defendant wrongfully fail to perform its contract with the plaintiffs ?

"6. What damage, if any, are the plaintiffs entitled to recover ?"

Judgment was rendered in favor of plaintiffs, and defendant appealed.

The record shows that there was evidence sufficient to sustain the findings. So there are but two substantial questions raised by the assignments of error—one relates to the terms of the contract; the other to the damages. What the terms of the contract were was a question of fact to be found by the jury upon the evidence submitted to them. Whether it was made on the 19th or on the 21st, or partly at one time, and concluded at another, is not material. After hearing the evidence, affirmed by the plaintiffs' testimony, and contradicted by that of defendant, the jury found the contract to be as stated in the first, second, third and fourth issues, and there appearing no error in the admission of evidence to prove

the same, it must stand.    This brings us to the consideration
of the exceptions relating to the damages.    While there are
numerous exceptions presented by the instructions asked and
refused, and to the charge given, they are all raised and cov-
ered by the first exception: "Plaintiff offered to prove by
witness that plaintiffs were prepared to make crates (with the
exception of having the rollers in controversy) ; the quantity
and price at which they had taken orders ; the estimated costs
of making them and the estimated profits lost by them," which
was objected to and admitted over objection, and defendant
excepted.

Damages are given as a compensation, recompense or satis-
faction to the plaintiff for an injury actually received by him
from the defendant, and should be precisely commensurate
with the injury, neither more nor less.    2 Greenleaf Ev., Sec.
253.   The amount should be what he would have received if
the defendant had complied with his contract.    *Alden v.
Keighly,* 15 M. and W., 117.

The general rule respecting a breach of contract is that re-
coverable damages are such as are the result of the breach
complained of and must be the natural and proximate conse-
quence of such breach.    Greenleaf Ev., Secs. 254, 256.    But
profits which are dependent upon the success of an unde-
veloped business adventure, fluctuations of values and con-
tingencies, etc., are too remote and uncertain and can not be
recovered.    But if damages for the loss of profits (which is
an extraordinary special damage) are claimed, they must be
incidental to the breach in such sense that they were contem-
plated by the parties at the time the contract was made and
the data of estimating such profits must be so definite and
certain that they can be ascertained reasonably by calculation
and the party at fault must have had notice, either of the
nature of the contract itself, or by explanation of the circum-
stances at the time the contract was made that such damages

would ensue from the non-performance; and profits lost by such a breach and under such contract and conditions are recoverable. *Railroad v. Ragsdale,* 46 Miss., 458; *Smead v. Foard,* 1 Ellis & Ellis, 602; *Horne v. Railway Co.,* 7 C. C. P., 583; *Hadley v. Baxendale,* 9 Exc., 341; *Mace v. Ramsey,* 74 N. C., 11.

The issues as found having established the fact that the defendant was informed by plaintiffs that they had received orders for 25,000 crates, which they had agreed to manufacture and deliver, and that they had no other machine with which they could prepare veneering for making the crates, it naturally follows, according to the due course of business transactions that it was in the contemplation of the parties that plaintiffs would lose the profits upon their contracts if they could not get their machine repaired and fitted for the work in time to make the crates. Now, then, if the data of estimating the profits be so definite and certain that they can be ascertained reasonably by calculation, then they can be recovered. The market value of the crates is shown by the evidence to have been 28 cents a piece, but plaintiff had agreed with responsible parties to sell them at 25 cents. By deducting the actual cost of making them from the agreed price we have the exact profit. But defendant insists that the evidence showing the cost of making was speculative, remote and incompetent. The testimony of plaintiff A. Rowe shows that they had all the material, labor and other utilities necessary for making the crates, and that they cost plaintiffs 12 cents each. The timber in a crate cost three cents; the hinges, clasps, corner irons, nails and all hardware cost $3\frac{1}{2}$ cents; the baskets cost 3 cents, setting up the body of the crate cost $1\frac{3}{4}$ cents, division racks cost $\frac{1}{2}$ cent, making a total of $11\frac{3}{4}$ cents, leaving a margin of $\frac{1}{4}$ cent to make the total cost at 12 cents per crate. The accuracy of this testimony and calculation depended upon the credibility to be given it by the jury, to be

ascertained from his capacity, knowledge, experience, etc. There was evidence introduced by defendant tending to show the cost to be 24 cents, the items being hinges and hasps, $1\frac{1}{2}$ cents; corner irons, $1\frac{1}{4}$ cents; nails, 3 cents; lumber, 5 cents; uprights, 1 cent; racks, 3 cents; labor, 2 cents; baskets, 5 cents, making 22 cents, and estimating unknown costs, such as wear and tear upon machinery, oil, breaking down and other contingencies, 2 cents, making the total cost 24 cents. With this evidence before the jury we see no reason why they could not determine with accuracy and certainty the net profits involved in the contracts or orders. After first determining by the weight of evidence and credibility of the testimony, the actual cost of the several items, the result would follow from a simple mathematical calculation. And here it seems that the jury relied upon the testimony of defendant's witness (Pierce) and accepted his calculation or estimate as being true, since they assessed the damages at $750 (25c.—22=3c. per crate; 25,000 crates × 3c.—$750; having discarded his estimate of 2c. for unknown cost).

In the case of *Jones v. Call*, 96 N. C., 337, 60 Am. Rep., 28, the plaintiff was engaged in manufacturing and selling patent tobacco machines, and had made contracts to sell and deliver a certain number of machines at a certain price. Before complying with his contract his business was broken up by the defendant and thus prevented from doing so. There our Court held that plaintiff could recover the profits on the contracts which he had actually made and been prevented from complying with by the wrongful act of defendant, but not for the possible profits which his business might have yielded if he had not been interfered with. The facts in this case are similar to those in the case at bar, but differed in that this plaintiff's business was discontinued absolutely. But then the plaintiffs, though being thus disappointed, and being prevented from making the crates for which they had orders, and injured by defendant's breach, should not have remained

idle; they should have made reasonable exertions to help themselves and thereby reduce the loss and diminish the responsibility of the defendants. *Railroad Co. v. Ragsdale, supra.* It may be that plaintiffs were profitably employed all the while and really performed other work which was more remunerative than would have been the profits on these crates, which they could not have done had the rollers been duly repaired and delivered to them; or, for the want of the repaired rollers, they may have been unemployed wholly or in part, with their laborers on their hands at an expense and with their machinery idle and deteriorating in value. But as to this the pleadings are silent, and we must rule upon the questions as presented to us by the record.

There is no error, so the judgment must be

Affirmed.

Furches, C. J., dissents.