FURCHES, C. J., dissenting. *Page 401 
Plaintiffs were engaged in the manufacture of lumber, strawberry crates, baskets, and other vegetable packages; had made a few crates two years before, and a few the past year; previous to November, 1899, they had made about 6,000 poor crates, but bought the baskets for them. In 1899 they had contracted with responsible parties to manufacture and deliver to them in the months of February and March, 1900, 25,000 crates at the price of 25 cents per crate. To comply with their contracts it was necessary for them to have repaired the steel rollers belonging to and a part of their veneering machine, without which they could not comply. During the month of November, 1899, plaintiffs and defendant entered into a contract by the terms of which defendant obligated itself to repair the machinery and fit it for the use desired. Plaintiffs contend that defendant agreed to have (585) it ready in three weeks, and that they informed defendant of their contract to manufacture the 25,000 crates, and that defendant failed to do the work within the time agreed upon, and by its repeated and continuing promises to do the work, upon which they relied, they were induced to wait so long that they were prevented from having the work done elsewhere, and the time expired and they were thus prevented from complying with their contracts and had to cancel them, and thereby lost the profit on their contracts; that they were prepared in every other respect to make the crates and were prevented from making them for the want solely of the repaired steel rollers. With the rollers so repaired the expense of making the crates would have been 12 cents per crate. The defendant admitted the contract to repair, but denied that it agreed to complete the work in three weeks and denied that it was informed by plaintiffs of their contracts to fill orders for 25,000 crates, but admitted that the work had never been completed. It contended that the contract was made on 21 November, and that the conversation alleged to have been had with plaintiffs (and which it denied having had), on the 19th, formed no part of the contract, and that any information given it at that time did not affect it with notice and was not within their contemplation in making the contract on the 21st, and that plaintiffs could not recover for any loss of profits, because the evidence showing the cost of making *Page 402 
the crates was speculative, remote and incompetent; and that the loss of such profits, if provable, would be a remote and speculative damage, and not such as, being incidental to the breach of contract, would be the natural consequence thereof and reasonably presumed to have been within the contemplation of the parties when the contract was made. The following six issues were submitted to the jury — the first five were answered "Yes," and by the sixth assessed the damages found due to the plaintiff at $750, viz.:
(586) "1. Did the defendant, on 21 November, 1899, enter into a contract with the plaintiffs to alter and repair at the price of $60 the rollers belonging to plaintiffs' veneering machine and to deliver the same, rebuilt and repaired, to the plaintiffs within three weeks from the day of the delivery of said rollers to it by the plaintiffs?
"2. Were such rollers necessary to plaintiffs' veneering machine in preparing the timber of which to manufacture strawberry crates?
"3. Was the defendant at the time of making said contract informed that the plaintiffs had no other machine with which they could prepare veneering for making strawberry crates?
"4. Was the defendant at the time of making said contract informed that the plaintiffs had received orders for 25,000 crates which they had agreed to manufacture and to deliver in the months of February and March, 1900?
"5. Did the defendant wrongfully fail to perform its contract with the plaintiffs?
"6. What damage, if any, are the plaintiffs entitled to recover?"
Judgment was rendered in favor of plaintiffs, and defendant appealed.
The record shows that there was evidence sufficient to sustain the findings. So there are but two substantial questions raised by the assignments of error — one relates to the terms of the contract, the other to the damages. What the terms of the contract were was a question of fact to be found by the jury upon the evidence submitted to them. Whether it was made on the 19th or on the 21st, or partly at one time and concluded at another, is not material. After hearing the evidence, affirmed by the plaintiffs' testimony, and contradicted by that of defendant, the jury found the contract to be as stated in the first, second, third and fourth issues, and there appearing no error in the admission of (587) evidence to prove the same, it must stand. This brings us to the consideration of the exceptions relating to the damages. While there are numerous exceptions presented by the instructions asked and refused, and to the charge given, they are all raised and covered by the first exception: "Plaintiff offered to prove by witness that plaintiffs were prepared to make crates (with the exception of having the rollers in controversy); the quantity and price at which they had taken orders; *Page 403 
the estimated costs of making them and the estimated profits lost by them," which was objected to and admitted over objection, and defendant excepted.
Damages are given as a compensation, recompense or satisfaction to the plaintiff for an injury actually received by him from the defendant, and should be precisely commensurate with the injury, neither more nor less. 2 Greenleaf Ev., sec. 253. The amount should be what he would have received if the defendant had complied with his contract. Alden v. Keighly, 15 M. 
W., 117.
The general rule respecting a breach of contract is that recoverable damages are such as are the result of the breach complained of and must be the natural and proximate consequence of such breach. Greenleaf Ev., secs. 254, 256. But profits which are dependent upon the success of an undeveloped business adventure, fluctuations of values and contingencies, etc., are too remote and uncertain and can not be recovered. But if damages for the loss of profits (which is an extraordinary special damage) are claimed, they must be incidental to the breach in such sense that they were contemplated by the parties at the time the contract was made and the data of estimating such profits must be so definite and certain that they can be ascertained reasonably by calculation and the party at fault must have had notice, either of the nature of the contract itself or by explanation of the circumstances at the time the contract was made that such damages would ensue from the nonperformance; and profits lost by such a breach and under such (588) contract and conditions are recoverable. R. R. v. Ragsdale,46 Miss., 458; Smead v. Foard, 1 Ellis Ellis, 602; Horne v. R. R., 7 C. C. P., 583; Hadley v. Baxendale, 9 Exch., 341; Mace v. Ramsey,74 N.C. 11.
The issues as found having established the fact that the defendant was informed by plaintiffs that they had received orders for 25,000 crates, which they had agreed to manufacture and deliver, and that they had no other machine with which they could prepare veneering for making the crates, it naturally follows, according to the due course of business transactions, that it was in the contemplation of the parties that plaintiffs would lose the profits upon their contracts if they could not get their machine repaired and fitted for the work in time to make the crates. Now, then, if the data of estimating the profits be so definite and certain that they can be ascertained reasonably by calculation, then they can be recovered. The market value of the crates is shown by the evidence to have been 28 cents apiece, but plaintiff had agreed with responsible parties to sell them at 25 cents. By deducting the actual cost of making them from the agreed price, we have the exact profit. But defendant insists that the evidence showing the cost of making was speculative, *Page 404 
remote and incompetent. The testimony of plaintiff A. Rowe shows that they had all the material, labor and other utilities necessary for making the crates, and that they cost plaintiffs 12 cents each. The timber in a crate cost 3 cents; the hinges, clasps, corner irons, nails and all hardware cost 3 1/2 cents; the baskets cost 3 cents, setting up the body of the crate cost 1 3/4 cents, division racks cost 1/2 cent, making a total of 11 3/4 cents, leaving a margin of 1/4 cent to make the total cost at 12 cents per crate. The accuracy of this testimony and calculation depended upon the credibility to be given it by the jury, to be (589) ascertained from his capacity, knowledge, experience, etc. There was evidence introduced by defendant tending to show the cost to be 24 cents, the items being hinges and hasps, 1 3/4 cents; corner irons, 1 1/4 cents; nails, 3 cents; lumber, 5 cents; uprights, 1 cent; racks, 3 cents; labor, 2 cents; baskets, 5 cents, making 22 cents, and estimating unknown costs, such as wear and tear upon machinery, oil, breaking down and other contingencies, 2 cents, making the total cost 24 cents. With this evidence before the jury, we see no reason why they could not determine with accuracy and certainty the net profits involved in the contracts or orders. After first determining by the weight of evidence and credibility of the testimony the actual cost of the several items, the result would follow from a simple mathematical calculation. And here it seems that the jury relied upon the testimony of defendant's witness (Pierce) and accepted his calculation or estimate as being true, since they assessed the damages at $750 (25c. — 22==3c. per crate; 25,000 crates X 3c. — $750; having discarded his estimate of 2c. for unknown cost).
In Jones v. Call, 96 N.C. 337, 60 Am. Rep., 28, the plaintiff was engaged in manufacturing and selling patent tobacco machines, and had made contracts to sell and deliver a certain number of machines at a certain price. Before complying with his contract his business was broken up by the defendant and thus prevented from doing so. There our Court held that plaintiff could recover the profits on the contracts which he had actually made and been prevented from complying with by the wrongful act of defendant, but not for the possible profits which his business might have yielded if he had not been interfered with. The facts in this case are similar to those in the case at bar, but differed in that this plaintiff's business was discontinued absolutely. But then the plaintiffs, though being thus disappointed, and being prevented from making the crates for which they had orders, and injured by defendant's breach, should not have remained idle; they should have made reasonable exertions to help themselves and thereby reduce the loss and (590) diminish the responsibility of the defendants. R. R. v. Ragsdale, 46 Miss. 458. It may be that plaintiffs were profitably employed *Page 405 
all the while and really performed other work which was more remunerative than would have been the profits on these crates, which they could not have done had the rollers been duly repaired and delivered to them; or, for the want of the repaired rollers, they may have been unemployed wholly or in part, with their laborers on their hands at an expense and with their machinery idle and deteriorating in value. But as to this the pleadings are silent, and we must rule upon the questions as presented to us by the record.
No error.