PIEKARSKY v. ROSSMAN.

No. 508.

United States District Court
M. D. North Carolina, at Greensboro.

Feb. 16, 1951.

1. Tucker v. New Orleans Laundries, Inc., D.C.E.D.La.1949, 90 F.Supp. 290.

Jones & Jones, Rockingham, N. C., for plaintiff.

B. L. Herman, High Point, N. C., for defendant.

WARLICK, District Judge.

This is a civil action tried by the court without a jury under the rules and involves a controversy between the parties to the action over the terms of a contract for the purchase and sale of certain nylon yarn. Jurisdiction of the cause comes about on the grounds of the diversity of citizenship and the amount alleged in the controversy. From a hearing of the evidence the following facts appear to be warranted and as such are found by the court.

On January 14, 1950, the plaintiff, Paul Pickarsky, trading as Rivercrest Fabrics, a resident of Patterson, New Jersey, came to Greensboro, North Carolina, in company with one Sylvan A. Saul, a resident of Danbury, Connecticut, for the sole purpose of purchasing certain nylon yarn from the defendant, Aaron Rossman, a resident of Thomasville, in Davidson County, in the Middle District of North Carolina. His coming to Greensboro was due to a letter dated December 29, 1949, from the defendant to Mr. Saul in which the defendant had acquainted Saul with his desire to sell to him certain nylon. That after some discussion, in Greensboro, the plaintiff purchased from the defendant 106 pounds of nylon yarn at the sale price of $7.50 per pound, and thereupon additionally purchased 502 pounds at a similar figure of $7.50, plus a commission of 5%. The 106 pounds of nylon was supposedly in the automobile of the defendant in Greensboro, and the 502 pounds of yarn was held by the Lancaster

Hosiery Mills in Pennsylvania, for the defendant's account.

That subsequently and on January 17, 1950, and after the plaintiff had returned to his home, pursuant to the above contract of purchase, the plaintiff forwarded by Western Union to the defendant, $1406.00 as a payment on said purchase, this being done at the request of the defendant and under his contract. This amount was received by the defendant on January 18th. The residue representing a full compliance with the contract of purchase and sale was to be paid by the plaintiff to the defendant or his designated authority on notice received that the nylon was ready for delivery at his place of business in Patterson, New Jersey. This yarn so purchased is what is known in the nylon trade as 15 denier mona-filament 200 type nylon yarn, and was to be in the original package.

Following the negotiations in Greensboro and thereafter from the defendant's home in Thomasville, the plaintiff called one George Schrank, an official of the Harold A. Rayness Textiles, Inc., in New York, on the telephone and discussed with him a resale of the nylon purchased herein, and that the defendant took part in such telephone conversation by talking with Mr. Schrank concerning the sale, which the court finds as a fact, fully acquainted the defendant with knowledge that a resale would subsequently be effected.

Thereafter and on January 19th the plaintiff sold to the Harold A. Rayness Textiles, Inc., 450 Seventh Avenue, New York City, the entire 608 pounds of nylon yarn as described above, originally packaged, at $11.00 per pound, for a total of $6688.00 and on the same day received from the purchaser a check in the sum of $3000.00 as a part of the purchase price; the remainder of $3688.00 to be paid upon delivery.

That after several discussions, numerous telephone calls, and a visit by the defendant to New York City where the plaintiff was contacted, the defendant failed and refused to make delivery and otherwise comply with the contract. Defendant further failed and refused to return the deposit of $1406.00 to the plaintiff. Thereupon plaintiff returned the deposit of $3000.00 to the Harold A. Rayness Textiles, Inc., and secured its acceptance of his release from the terms of this sale, and thereafter this action was instituted.

Delivery of the product purchased by the plaintiff from the defendant was to be had not later than the middle of February, 1950.

The total purchase price of the articles sold by the defendant to the plaintiff was $4748.25, and that the plaintiff stood ready, able and willing to comply with the contract upon its completion by the defendant.

That the sale price by the plaintiff to the Harold A. Rayness Textiles, Inc., as above set out was $6688.00 and deducting therefrom the amount of costs under the contract between the parties hereto of $4748.25, it is evident that plaintiff has suffered a loss through the failure of the defendant to comply with the contract in the sum of $1939.75, and that adding thereto the sum of $1406.00 paid to the defendant by the plaintiff would indicate that plaintiff has suffered a loss on account of the failure of the defendant to comply with the contract in the sum of $3345.75, less commissions of $188.25 on the 502 pounds of yarn, which is $3157.50.

I was not impressed with the evidence offered as such on the counter-claim set out in the answer of the defendant in which an effort was made to connect the plaintiff herein with previous dealings between the defendant and one Phillip J. Rapport, and I dismiss such as being without value and merit.

From the above findings of fact the case would appear to be a very simple one. A goodly part of the evidence had to do with the manner and way in which nylon is distributed by the manufacturers. It seems that the product is wholly one that is manufactured and sold by the DuPont Company and that the manufacturer does not see fit to increase its output as such in this type of commodity and thereupon has effected its sales through allotments to the various hosiery manufacturing concerns in the country, and that this method has created a demand considerably bigger than the supply as produced by the DuPont Company.

That the hosiery manufacturers with whom DuPont does business invariably accept their allotments and that some of them have seen fit, after accepting and paying for the allotment from the DuPont Company, to permit some of the nylon to get into the open market and sold at prices far in excess of that originally charged by the manufacturing agencies, which creates the situation shown in this controversy. The price imposed on the trade by the DuPont Company in January, 1950, as the evidence shows, is $6.00 a pound, but that thereafter any of the nylon getting into the open market and purchased by companies to whom allotments were not allowed and whose only access to the product would be through a purchase on some market other than that of the manufacturer has caused the price to fluctuate in a sense dependent upon the desire and need of the ultimate purchaser. This situation was known by the parties hereto. The court finding from several independent investigations that in January 1950 what we might call the legitimate market as set up for the manufacturer of 15 denier nylon was $6.00. This scarcity of the commodity created the desire on the part of the plaintiff who was engaged in the sale of textiles to make the purchase and was also the mechanics by which he was enabled thereafter to sell it at a figure of $3.50 in excess of the amount paid by him, which likely represented the purchasing market in New York and its environs by those not entitled to the allotments from the manufacturers. That such had been the situation for a considerable period of time and is as a fact, the situation as of today.

This case does not involve the discussion of any new principal of law and actually embraces those conceptions of the law entertained for generations by the Bench and Bar, and, apparently simple as it appears to be it would seem that a correct conclusion of the applicable authority to the facts found would not be difficult to reach.

 Generally speaking, the amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for its breach.

Benjamin v. Hillard, 23 How. 149, 16 L. Ed. 518. And that where one violates his contract he is liable for such damages, including gains prevented, as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation. Griffin v. Colver, 16 N.Y. 489; Machine Co. v. Wells-Whitehead Tobacco Co., 141 N.C. 284, 289, 53 S.E. 885, 8 L.R.A.,N.S., 255.

 Again generally speaking, the true rule for the estimation of damages on the breach of a contract is the difference between the actual contract price and the market value of the commodity sold, at the time and place fixed for its delivery. It is the usual rule by which to measure damages in such cases and is such as was and must have been in contemplation of the parties at the time they made the contract, and the one which would naturally and probably result from a breach by the defendant. Berbarry v. Tombacher & Banor, 162 N.C. 497, 77 S.E. 412.

However, when the case of profits is to be considered, such as gains prevented as well as losses sustained, it would appear that such can be compensated for as in contemplation of the parties when in so doing the calculation can be made without too many contingencies and too much dependence upon the fluctuation of markets and chances of business.

This contract being determined under the North Carolina law and being governed by the holdings of said State, it is found that much thought has been devoted and much attention paid to this element of damage and that the decisions hold and are to the effect.

 1. Where one violates his contract, he is liable for such damages, including gains prevented as well as losses sustained, as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed.

752

■■■

■ 2. The law seeks to give full compensation in damages for a breach of contract, and in pursuit of this end it allows profits to be considered when the contract itself, or any rule of law, or any other element in the case, furnishes a standard by which their amount may be determined with sufficient certainty.

■ 3. In an action for damages for a breach of contract, in the absence of some standard fixed by the parties when they made their contract, the law will not permit mere profits, depending upon the chances of business and other contingent circumstances, and which are perhaps merely fanciful, to be considered by the jury as a part of the compensation.

4. In an action for damages, the plaintiff must prove, as part of his case, both the amount and the cause of his loss. Absolute certainty, however, is not required; but both the cause and the amount of the loss must be shown with reasonable certainty. Substantial damages may be recovered, though plaintiff can only give his loss approximately. A difficulty arises, however, where compensation is claimed for prospective losses in the nature of gains prevented; but absolute certainty is not required. Compensation for prospective losses may be recovered when they are such as in the ordinary course of things are reasonably certain to ensue. Reasonable means reasonable probability. Where the losses claimed are contingent, speculative, or merely possible, they cannot be allowed. Profits which would certainly have been realized but for the defendant's fault are recoverable; those which are speculative and contingent are not. The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed. It is not necessary that such damages shall be shown with mathematical accuracy. See Hale on Damages, pp. 70, 71. Griffin v. Colver, 16 N.Y. 489; Masterton v. Mayor, 7 Hill, N. Y., 61; American Lumber Co. v. Quiett Manufacturing Co., 162 N.C. 395, 78 S.E. 284.

■ Damages are given as a compensation, recompense, or satisfaction to the plaintiff for an injury actually received by him from the defendant, and should be precisely commensurate with the injury, neither more nor less. 2 Greenleaf Ev., Sec. 253. The amount should be what he would have received if the defendant had complied with the contract. Alden v. Keighly, 15 M. and W. 117. Pender Lumber Co. v. Wilmington Iron Works, 130 N.C. 584, 41 S.E. 797.

■ I therefore conclude that the plaintiff having complied with his part of the contract and relying thereon and in turn having resold the yarn, would be entitled to have and recover of the defendant $3157.50 on the defendant's breach of the contract to the extent that delivery was not effected by him in compliance thereof.

Decree carrying this into effect to be submitted.