### CHESBROUGH v. WOODWORTH.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1915.)

No. 2634.

1. BANKS AND BANKING ☞254—ACTIONS AGAINST DIRECTORS—SUFFICIENCY OF EVIDENCE.

In an action against a director in a national bank for damages sustained by a person induced to buy stock in such bank in reliance on published reports of its condition which included as assets a large amount of worthless loans, evidence *held* insufficient to make a question for the jury as to defendant's knowledge at the time the reports were made and published of the worthlessness of any part of the loans in excess of the amount written off as worthless, a little more than a year thereafter.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 950–957; Dec. Dig. ☞254.]

2. BANKS AND BANKING ☞254—ACTIONS AGAINST DIRECTORS—ADMISSIBILITY OF EVIDENCE.

In such action, evidence that other directors of the bank personally believed the loans to be well enough secured so that they were mostly good, was properly excluded, as it was defendant's belief, and not what the other directors believed, that was in issue, and his conclusions would be based on the extent to which his personal confidence in the borrower was impaired; the extent of his knowledge of the borrower's assets from other sources than the borrower, his expert knowledge of the business of the borrower, and his resulting skill in valuing the assets of such a business, and his individual tendency to look on the bright or dark side of the matter, and with respect to most of these elements it could not be assumed that he was in the same situation as the other directors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 950–957; Dec. Dig. ☞254.]

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by Frank T. Woodworth against Frank P. Chesbrough and another. Judgment for plaintiff, and the defendant named brings error. Affirmed, on condition that plaintiff file remittitur.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

T. A. E. Weadock, of Detroit, Mich., for plaintiff in error.
E. S. Clark, of Bay City, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. The broad questions regarding the right of action in this case were considered and decided by this court upon a former writ of error. 195 Fed. 875, 116 C. C. A. 465. It is unnecessary to restate the facts. It then appeared that the jury had found a verdict upon the theory that defendants, as directors of the bank, had become subject to a duty to charge off from the books of the bank the sums of $233,000 and $70,000, which were, in fact, ultimately lost by the bank upon liquidation of the Maltby and Brotherton debts, respectively; and it is this reduction of the directors' duty in this respect to terms of dollars to which we propose to refer as the "basis" of recovery. We held that, for lack of proof, the Brotherton loss must be excluded from such basis, that the proof fairly tended to support the $135,000 basis as to the Maltby loss, but that beyond this sum the proof as to the Maltby loss was too conjectural and speculative to support a verdict. We reached this conclusion, because the proofs tended to show that defendants, during 1903, either in fact knew or must be charged with knowing that a large share of the Maltby debt was bad, and because, while there was nothing definite to show how much was then known to be worthless, the fact that the directors did, within the next year, charge off $135,000 was sufficient to convert mere conjecture into reasonable inference, and so the verdict had support up to the $135,000 basis, and not beyond. We found ourselves unable to accept plaintiff's offer of remittitur and to affirm the judgment to the extent of this basis, because of other errors which entitled the defendant to a new trial of the main issues.

Upon the second trial, the plaintiff abandoned any claim to recovery dependent on the Brotherton loss; and with regard to the Maltby debt, plaintiff claimed and recovered a verdict upon the basis of $200,000, being $65,000 in excess of the basis which, if our former decision be accepted, it must be conceded the proof tends to support; and defendant Chesbrough, after severing McGraw, alone brings error. Instructions given to the jury to guide it in reaching the basis of recovery, were substantially in harmony with the rules which we indicated; and so the question is whether new evidence on the second trial justified at all the jury in finding the whole or any part of this $65,000.

[1] There is only one substantial difference in this respect between the records on the two trials. Upon the first trial, it appeared that the bank directors had taken possession of the Maltby business, were engaged in its liquidation and were bound to know there would be a large loss, and that the total loss actually resulting several years later was $233,000. There was nothing to fix upon the directors knowledge during 1903, of specific values of items of Maltby property, leading up to actual total value of the Maltby assets. On the second trial, it appeared that early in November, 1902, Maltby presented to the bank his complete inventory and statement, made as of October 31, 1902,

221 F.—58

and showing assets of $597,000, and liabilities of $412,000 and "net present worth," $185,000; that the directors appointed defendant McGraw to make an investigation of the Maltby assets, and that McGraw made an inventory called a "report," the date of which should presumably be assumed to be about the middle of December, in which report he gave his own estimate of certain values, and which values, as far as they are comparable with figures in the Maltby inventory, average much smaller. Plaintiff submitted to the jury and presents here an elaborate analysis and computation in the nature of an argument that the McGraw report tends to show that the assets were worth not more than $204,000, and hence that, instead of a surplus, there was a deficit of $208,000. In argument to the jury, plaintiff abated these figures $8,000 for possible uncertainties, and so reached the $200,000 basis which the jury accepted.

We think there was evidence fairly indicating that the McGraw report was known to Chesbrough, and so there is presented the sharp question whether that report substantially tended to prove the $200,-000 basis. We appreciate the caution with which an appellate court must approach such a question under a writ of error; and we realize that such a verdict must not be declared unsupported by any evidence, unless the proposition is one upon which reasonable minds cannot differ. At the same time, we realize that directors who, perhaps without any fault on their part, find their bank confronted with an enormous loss, may be compelled to choose between precipitating a panic and ruining the bank if they make full and public disclosure, and, on the other hand, by gradual disclosure, saving the bank from collapse and retrieving part of the loss; that this is a hard choice; and that while this hardship cannot bar the statutory result of their proved violation of law, yet it entitles the directors not to be condemned upon mere guesswork and surmise years after the event, when the earlier duty in the face of then existing uncertainty is so likely to be judged by the certainty later developed. These considerations justified us in holding the verdict excessive on the former trial, and they justify us in adhering to the same point of view. From this point of view, we are compelled to think that the McGraw report is legally insufficient to have its claimed effect. It does support the inference that the directors were put on notice regarding the reliability of the Maltby inventory, and it might support the inference that Chesbrough was negligent in not then ascertaining that the loss would be as great as it proved to be; but such negligence is not the issue. To this plaintiff, Chesbrough is liable only for that conduct which is practically equivalent to intentional misleading; and evidence well supporting a charge of negligence may have no legal tendency to support a finding of intentional or reckless wrong.

We have reached this conclusion after study and analysis of the McGraw report as compared with the Maltby inventory. It would unduly extend this opinion to go much into the details of this comparative analysis. It is sufficient to notice, among other things: That plaintiff's theory requires a finding that the directors knew the Maltby assets would realize less than 45 per cent. of Maltby's figures; that there

was an interval of time between Maltby and McGraw during which shipments had been continued, of which shipments or their proceeds the McGraw list takes no account and which there is reason to think might reach $30,000; that the two are, in many respects, incapable of comparison; that the McGraw inventory does not, on its face, purport to be and is not shown to have been complete; that it (seemingly) wholly omits any reference to the stock on hand in the two main yards, which two items, by the Maltby inventory, amount to $153,000; that it wholly omits any reference to other classes of property inventoried by Maltby at $201,000, and as to which it is proved only that they did not have the Maltby stated value, but the actual value of which is left to surmise; that items amounting to many thousands of dollars found in McGraw's detail sheets are omitted from his recapitulation, etc. We therefore hold that the submission to the jury should have been limited to the $135,000 basis. Traveling through such uncertain footing, the presence of a reasonably safe spot to stand on emphasizes the danger of trying to stand anywhere else.

In reaching this conclusion, another feature has distinct force: After plaintiff became a director, and while the bank continued to carry and report as assets all the Maltby paper above $135,000, plaintiff joined in these reports. We held that this did not amount to an estoppel, but was in the nature of an admission having evidential force. The McGraw report, which is said to establish knowledge against Chesbrough, became part of the books and papers of the bank, and was presumptively known also to Woodworth when he signed the reports of 1905. By so much is the evidence against plaintiff stronger than it was before, and by so much more does it seem probable that he is himself guilty of the same kind of conduct upon which he relies to establish his claim against Chesbrough. This increases the necessity that his case should be supported by testimony clearly fit to induce conviction rather than by vague inferences; and this consideration alone is enough to put this case almost in a class by itself as to the degree of proof required to justify submission.

[2] Several assignments of error raise in one form or another the theory that defendant could be liable under the declaration only for the affirmative action of the board, or only if the board as a body did or omitted something against the duty of the board as a body. In the main, these contentions are sufficiently disposed of by the previous opinion; but they present also the specific complaint that the other directors, not defendant, were not allowed to testify that they personally believed the Maltby paper to be well enough secured, so that it was mostly good. The issue was, in this particular respect, not what they believed, but what Chesbrough believed. It often might well be that what one director believed would have some relevancy, in a popular and even in a legal sense, upon the question of what another director believed; but that cannot be the rule, in a situation like this. The conclusion which a director would form about the value of the Maltby assets would depend upon many elements—among them (1) the extent to which his personal confidence in Maltby was impaired; (2) the extent of his knowledge about the assets and from other sources

than Maltby; (3) his expert knowledge of this particular branch of lumber business, and his resulting skill in valuing the assets of a going business; and (4) his individual tendency to look on the bright or the dark side of the matter. Perhaps it could be assumed that Chesbrough was in the same situation as the other directors as to the second above recited element; there can be no such assumption as to the other three. We think the trial court was right in confining the testimony of the other directors to their acts, and in refusing to permit them to declare their state of mind.

A very large number of assignments of error is presented. Those which do not raise the same questions disposed of on the former hearing we have examined, and we do not find that any one of them is based on prejudicial error. In so far as they do raise again the same questions which we have once determined, we assume that they are now only intended properly to shape the record for review by the Supreme Court.

If the plaintiff, within 30 days from the filing of this opinion, files in the court below his written election to reduce the judgment by the sum in which it exceeds the $135,000 basis, and files in this court a certified copy of such remittitur, the judgment, as so modified, will be affirmed; otherwise, and for the reasons stated, it will be reversed, and the case remanded for a new trial. In either case, Chesbrough will recover the costs of this court. The plaintiff, if he desires to abate, should prepare and give to the defendant a statement showing his basis of apportionment and interest computation; if counsel do not agree upon this result, the matter can be summarily submitted to us.