. THE CHAMPION FIBER COMPANY v. W. L. HARDIN.

(Filed 19 December, 1916.)

**1. Arbitration and Award—Contracts—Breach.**

The plaintiff and defendant contracted that the former should acquire title to certain timber lands to be held in trust for the latter and paid for in sawing the lumber, which thereafter the plaintiff breached by rendering performance by the defendant impossible, and then entered into another contract with the defendant wherein the prices to be paid defendant for cutting the timber and the proportionate amount to be paid for the land varied from the first one, and plaintiff also breached this contract: *Held,* the second contract was not an accord and satisfaction, was not pleaded as such, and did not prevent the defendant from recovering damages under the first contract, which the plaintiff had breached.

**2. Same—Performance—Pleas.**

An accord and satisfaction must be performed in its entirety by one claiming that it bars a recovery of the original right of action.

**3. Reference—Findings—Evidence—Contracts — Breach — Cutting Timber— Appeal and Error—Measure of Damages.**

Where the plaintiff has breached his contract by rendering it impossible for the defendant to cut the wood on his lands for a certain profit for certain periods of time, the report of the referee finding defendant's damage in a certain sum, which necessarily exceeds the profit that the defendant could have made from cutting the timber standing thereon, is without supporting evidence, and though approved by the trial judge, will not be upheld on appeal, the rule of damages as to such excess being the interest on capital invested during the suspension periods, expenses of employees and teams, deterioration in value of the property, and such other as directly and necessarily result from the wrongful act. .

**4. Contracts—Breach—Damages—Flume—Trials—Evidence.**

>    Where the value of a flume is an element of defendant's damages in
>    an action upon contract, evidence of its cost five years before the plaintiff
>    took possession, without evidence of the materials used in its construc-
>    tion, extent of deterioration, etc., is insufficient as to its value at the
>    time of plaintiff's possession.

APPEAL from *Long, J.,* at May Term, 1916, of HAYWOOD.

This is an action growing out of a contract made and entered into
by and between W. L. Hardin and The Champion Fiber Company,
dated 21 January, 1907, the material provisions of which are as follows:

1. The defendant Hardin agreed to sell, and the Champion Fiber
Company agreed to buy of said Hardin, all the pulp and acid wood on
certain lands in Haywood County, N. C., known as the Railway Addi-
tion to the Love lands, Henry Plott lands, Arthur Davis, Manuel
Hopper, and other lands, the terms of the sale being as hereinafter
set forth.

2. The title to said 763-acre tract of land above mentioned being,
at the time said contract was entered into, outstanding in the Haywood
Lumber and Mining Company and one R. L. Mehaffey having acquired
an equitable interest in said land, and the said Mehaffey having as-
signed to the defendant Hardin one-half of his equity therein, and the
plaintiff Fiber Company having paid to the said Mehaffey the sum
of $500 for an assignment of his interest in said tract, the said plaintiff,
Champion Fiber Company, undertook and agreed to pay to the Hay-
wood Lumber and Mining Company the sum of $3,060 and take to itself
a good and sufficient deed of conveyance for said 763-acre tract of land;
upon trust, however, that when the defendant W. L. Hardin should
repay to the Champion Fiber Company the sums so advanced and
paid it, at interest at 6 per cent per annum, and otherwise comply
with the terms of the contract then made, the said Champion Fiber
Company would make, or cause to be made, to the said W. L. Hardin,
his heirs and assigns, a good and sufficient deed to vest in him the title
to said 763-acre tract of land in fee simple.

3. The said contract was to cover a period of five years from date,
and the plaintiff Fiber Company agreed to pay to the defendant Hardin,
for the pulp and acid woods so purchased by it, according to the follow-
ing scale of prices, f. o. b. cars at railway siding at or near the station
of Saunook: for the year 1907, $4.25 per cord of 160 cubic feet; for
the year 1908, $4.50 per cord; for the year 1909, $4.75 per cord; for
the year 1910, $5 per cord; for the year 1911, $5.25 per cord.

4. It was agreed between the parties that the plaintiff Fiber Com-
pany might retain $1 per cord from the scale of prices above set forth,
to apply as a credit in Hardin's favor, upon the repurchase provision
of the said contract, unless all money advanced and paid by the Cham-

pion Fiber Company for said 763-acre tract of land should be otherwise repaid by Hardin within the five years limit of said contract, and when the sum so advanced by the Fiber Company has been repaid to it by Hardin, with interest as aforesaid, whether said sums should be repaid by the delivery of wood or otherwise, and when the defendant Hardin had otherwise complied with the terms of said contract he should be entitled to a deed for the land, as aforesaid.

5. The said acid and pulp wood, when cut and delivered by defendant Hardin as aforesaid, was to conform as nearly as practicable to certain detailed specifications, which specifications are set forth with minuteness in the said contract.

6. The defendant Hardin was to deliver not less than 4,000 cords of wood annually during the continuance of the contract, and in case he shipped 4,000 cords or more in any year he was to be allowed a bonus of 25 cents per cord on all wood shipped for that year, over and above the contract price for the year.

7. The defendant Hardin was to have the right at any time he might desire to submit to the Fiber Company an estimate of his pay-roll and actual expenses in getting out wood, and the Fiber Company should thereupon remit said sum to Hardin, the amount to be remitted, however, not to exceed 50 per cent of all the wood gotten out by Hardin and not paid by the Fiber Company.

8. All wood was to be ranked and measured upon the yards of the Champion Fiber Company, at Canton, North Carolina.

9. In case Hardin should fail from any cause to carry out his contract, the Fiber Company should have the right to enter upon the lands and cut and remove such wood as they should desire, and, after deducting the actual cost of cutting and removing the same, should account to Hardin therefor, according to the terms of the contract.

In pursuance of its said contract the said Champion Fiber Company did on 22 March, 1907, pay to the Haywood Lumber and Mining Company the sum of $3,060, and thereupon the said Haywood Lumber and Mining Company executed and delivered to said Champion Fiber Company a deed for said 763-acre tract of land.

Before the signing of the said contract, to wit, on 19 January, 1907, the plaintiff Fiber Company, by and with the consent and approval of the defendant Hardin, paid to R. L. Mehaffey the sum of $500, and thereupon the defendant Hardin and the said Mehaffey made a deed of assignment to said Champion Fiber Company for their interest in said 763-acre tract of land.

The Champion Fiber Company, in accordance with its agreement, procured a siding to be put in by the Southern Railway Company for the use of Hardin in making his wood shipments.

49—172

Soon after the execution of the contract, and prior to 16 February, 1907, the defendant went into possession of said lands and commenced his wood operations thereon.

On 6 November, 1907, the Champion Fiber Company refused to accept further pulp and acid wood, and accordingly directed the defendant Hardin to suspend his operations, and to secure a compliance with this request the Champion Fiber Company procured the Southern Railway Company to refuse to furnish cars to persons desiring to ship wood to said Fiber Company. This suspension commenced 6 November, 1907, and continued, subject to a few small shipments received, until 29 June, 1908, at which time a supplement contract or agreement was entered into by and between the parties hereto, by the terms of which said agreement shipments of wood were to be resumed immediately by the defendant at the rate of 10 cords daily, and the plaintiff company was to advance 50 per cent of the f. o. b. value monthly upon an estimate to be made by the agent of the plaintiff company; inspection to be made on or before the 5th of each month, and advancement to be made not later than the 10th of each month. The Fiber Company was to credit a new bonus of 25 cents per cord on wood shipped to date (6-29-08), and monthly thereafter on all shipments, until a total of 4,000 cords had been received, after which a new year was to commence. The original contract was to be dated forward seven months, and the defendant Hardin was to give written instructions to his attorneys to abandon an action which he, the said Hardin, had commenced against the plaintiff company for relief because of the aforesaid suspension and damages growing out of the same.

Immediately after the execution of the supplemental agreement of 29 June, 1908, the defendant Hardin resumed his wood shipments.

The plaintiff again caused the defendant to suspend his operations by refusing to receive the wood, in September and October, 1908.

On 3 March, 1909, another supplemental contract was entered into between the parties hereto, by the terms of which the defendant was to cut and rank not more than 500 cords per month, for which the Champion Fiber Company was to advance $2 per cord, upon an estimate made by Loomis, agent, between the 1st and 10th of each month. On 6 March, 1909, the plaintiff Fiber Company wrote the defendant to suspend *shipments* of chestnut wood. The defendant testified that when he got the letter he stopped shipping. On 22 March, he suspended until 10 September, at which said time he resumed shipments.

The plaintiff sues to recover $11,190.14 alleged to have been paid the defendant in excess of the amount due the defendant for wood and advancements.

The defendant denies that he owes the plaintiff anything, and he alleges by way of counterclaim that the plaintiff is indebted to him in the sum of $29,050, and that he is entitled to a conveyance of the 763-acre tract of land.

He, among other things, specifically claims damages for each time he was caused to suspend work, $2,250 damages for 1,600 cords of wood cut by the defendant and on the land when the plaintiff took possession; $1,500 for a flume constructed on the land by the defendant, and for 196 cords of wood delivered to the plaintiff and rejected by it.

The plaintiff relies on the supplemental contract of 1908 as an accord and satisfaction.

The action was referred, and on the coming in of the report was heard upon exceptions, and the court, after making specific findings, states the following account, which is made the basis of his judgment:

| | |
|---|---:|
| Advancements made by plaintiff................$ | 35,108.60 |
| $500 and interest thereon from 19 January, 1907, to 24 January, 1916........................ | 770.40 |
| $3,000 and interest from 22 March, 1907, to 24 January, 1916 ........................... | 4,682.80 |
| Plaintiff's total credits....................$ | 40,561.80 |

Credits to which Hardin, the defendant, is entitled:

| | |
|---|---:|
| 8 months breach of contract...................$ | 5,376.00 |
| Bonus on 2,688 cords of wood.................. | 672.00 |
| Damages for 1⅕ months suspension, less $100.... | 684.00 |
| Damages for third suspension and breach of contract, 3½ months........................... | 3,696.00 |
| 5,806 cords of wood and bonus thereon.......... | 28,539.75 |
| 1,200 cords of wood cut and hauled............. | 2,400.00 |
| Flume ...................................... | 750.00 |
| 196 cords of wood........................... | 294.00 |
| Making a total of the defendant's credits of..$ | 42,411.75 |
| Subtracting the plaintiff's credit of......... | 40,561.80 |
| Leaves a difference in favor of defendant of..$ | 1,849.95 |

The items "8 months breach of contract, $5,376," "Bonus on 2,688 cords of wood, $672," "Damages for 1⅕ months suspension less $100, $684," "Damages for third suspension and breach of contract, 5½ months, $3,696," are all for damages caused by the plaintiff refusing

to receive the wood and causing the defendant to suspend operations, and are based on the finding by the judge that the defendant would have delivered 336 cords of wood per month if he had not been interfered with.

The plaintiff excepts to each of these items, and to the items, "1,200 cords of wood cut, not hauled, $2,400," "Flume, $750," "196 cords of wood, $294," and to the findings supporting them, upon the ground that there is no evidence to sustain them.

His Honor held that the supplemental contract of June, 1908, was not an accord and satisfaction, and the plaintiff excepted.

Judgment was entered in favor of the defendant for $1,849.95, and that the plaintiff convey to him the 763-acre tract of land, and the plaintiff appealed.

*Smathers & Ward for plaintiff.*
*Howell & Bohannon, Alley & Leatherwood, and S. B. Shepherd for defendant.*

ALLEN, J. We concur with his Honor in holding that the supplemental contract of June, 1908, is not an accord and satisfaction.

It is not pleaded as such, the terms used do not reasonably lead to that conclusion, and instead of being performed, it has been breached by the plaintiff.

The question is considered and the authorities collected in *King v. R. R.,* 157 N. C., 54, and it is there held that an accord and satisfaction to be effectual "must be performed in its entirety. If performed in part only, the original right of action remains, and the party to be charged is allowed what he has paid in diminution of the amount claimed."

We are further of opinion there is no evidence to support the finding that the defendant could have delivered 336 cords of wood per month during the three periods when his operations were suspended by reason of the wrongful conduct of the plaintiff, and also that the rule adopted for the admeasurement of damages in this particular is erroneous, if, as the plaintiff contends, there is no wood uncut except that on the 763-acre tract which will belong to the defendant.

The defendant alleges in his counterclaim he could have delivered 300 cords per month while his operations were suspended, and he testified that he would have been able to deliver 300 cords per month.

He further testified that, "Eliminating the months during which his operations were suspended, he did not average 100 cords per month," and "that during the nine months in which he claimed wood shipments were suspended he could have gotten out and shipped 2,700 cords at a

cost of $2 per cord, and that he would have had a profit of $2 per cord, and the profit during the entire period would have been $5,400," and for this, if the defendant was referring to the whole period, he is allowed in the account stated by his Honor the four items of $5,376, $672, $684, $3,696, aggregating $10,428, and if only the first period is considered he is credited with 336 cords per month instead of 300 cords, to which he testifies, which would make a difference against the plaintiff in the first item of credit of $576 and in the second of $72.

The rule adopted for ascertaining the damage is not the correct one unless there is other wood in the contract which the defendant was prevented from cutting, for the reason he is awarded damages for wood he would have delivered during the suspension periods, when he afterwards delivered this same wood to the plaintiff and was paid this profit.

In other words, if, as the plaintiff contends, there is no other wood, and we eliminate the wood left on the 763-acre tract of land and uncut, which is not in controversy, the defendant cut 5,806 cords, 1,200 cords, and 196 cords, making a total of 9,202 cords, which would be all the wood on the land, except that not in controversy, and he is allowed a profit on 6,202 cords, 2,688 cords, 403 cords, and 1,848 cords, or 4,939 cords in excess of the wood on the land.

Profits may be recovered under certain conditions, as pointed out in *Wilkinson v. Dunbar,* 149 N. C., 20, and are allowable in this action under the rule followed by the Court if there is other wood uncut, except that on the 763-acre tract, which the defendant has been prevented from cutting; but under the facts as the plaintiff contends they appear in this record, the true rule is interest on the capital invested during the suspension periods, expense of employees and teams, deterioration in value of property, if any, by reason of the suspension, and any other damages the direct and necessary result of the wrongful act of the plaintiff. *Ford v. R. R.,* 53 N. C., 235; *Rocky Mount Mills v. R. R.,* 119 N. C., 709.

The evidence of the defendant as to the profit from the 1,200 cords of wood cut and not hauled is, in one place, that his profit would have been $1 per cord, in another $1.50, in another, $1.75, and finally that "his profit in the wood cut and left on the ground when the plaintiff took charge of the operation was $1.50 per cord," and there was therefore no evidence that the profit was $2 per cord, which was allowed him.

The reason for the difference in the profit on this and the other wood is that the defendant did not haul this wood, and escaped this expense.

The only evidence as to the value of the flume is that of the defendant, who testified that it cost him $1,500 to build it, presumably in 1907, when he began operations, and that the plaintiff took possession of it in 1912.

There is no evidence as to the material used, as to the life of the flume, or the extent of the deterioration, and while there may be some evidence of value, it is too vague and unsatisfactory to justify a finding that it was worth $750 in 1912.

We find no error in the other assignments.

The judgment of the Superior Court is reversed, and the cause is remanded, with directions to strike from the account the items:

| | |
|---|---:|
| 8 months breach of contract..................$ | 5,376.00 |
| Bonus on 2,698 cords of wood.................. | 672.00 |
| Damages for 1⅕ months supension, less $100.... | 684.00 |
| Damages for third suspension and breach of contract, 5½ months.......................... | 3,696.00 |
| 1,200 cords of wood cut, not hauled............ | 2,400.00 |
| Flume ...................................... | 750.00 |

and to assess the damages as to these items in accordance with this opinion.

Reversed and remanded.