O. B. RAWLS AND J. H. CLARK v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 21 February, 1917.)

**Carriers of Goods—Negligence—Measure of Damages—Arrival of Shipment—Misstatement of Agent—Cost of Output—Parties.**

The owner of a sawmill ordered repairs therefor which would reduce the cost of output and eliminate employment of an extra man, and sold the mill under contract that the repairs would be made, turned over the bill of lading to his vendee, who, upon notification by the railroad of their arrival, sent for them and was informed by the agent that the repairs were there and he would find them. The vendee told the agent what the repairs were and why they were needed, and continued to operate the mill at a loss for about a month, when he applied again, and was then told that the repairs were not there and he would have to sue the railroad. The repairs were then reordered, and in an action by the original owner and his vendee against the railroad, *Held*, that the loss occasioned by decreased output of the mill was recoverable by the vendee.

APPEAL by plaintiff from *Whedbee, J.,* at October Term, 1916, of BEAUFORT.

RAWLS *v.* R. R.

*Ward & Grimes for plaintiffs.*
*Small, MacLean, Bragaw & Rodman for defendant.*

CLARK, C. J.  In September, 1914, the plaintiff Rawls, who was engaged in the sawmill business, ordered some repairs for his plant from Salem, N. C., which was promptly shipped.  He testified that before the break in the machinery which this order was to repair he was cutting 7,000 to 8,000 feet of lumber per day, but after the break he could only get 3,000 feet per day and was, besides, at the expense of an extra man to work on the carriage, at the cost of $1.50 per day. The bill of lading reached the Bank of Washington with draft attached and he paid the same and was notified by the defendant by postal card that the shipment had arrived.  On that day or the next he sold out his mill to the other plaintiff, Clark, to whom he turned over the bill of lading, and the latter sent down to get the shipment which the defendant had notified them was there.  Not getting it, in a few days he went down himself to see the agent, and "told him what the stuff was and why he needed it, and that he could not operate the sawmill without it." The agent said that it was around there somewhere, and he would look it up.  After waiting some thirty or forty days longer, during which time he tried to operate the mill without it, but at considerable loss, both the plaintiffs, Clark and Rawls, went to the agent, who then said that "He could not find the damn stuff, and the plaintiff would have to sue the damn railroad."  Clark then at once wired for another shipment.

This action is brought to recover for the loss occasioned by the negligence of the railroad company in notifying the plaintiffs both by card and especially in person that the shipment was there, and for such loss up to the time when, on notification that the shipment could not be found, the plaintiff Clark ordered other repairs to replace that which had been lost.

It was gross negligence in the defendant to notify the plaintiffs, when personal application was made, with notice of the nature of the shipment and its necessity, that the shipment was there and could be found, and the defendant is liable for the direct loss resulting from such misstatement up to the time it finally notified the plaintiffs that the machinery could not be found, or at least for a reasonable time after he had been notified that the machinery was there and until he should have come to the conclusion that the information was incorrect.  The plaintiffs could not be expected to order new machinery, after notification that it was there, until notified that it was not, or at least until there had been reasonable time to justify them in ordering new machinery by reason of the nonarrival.

The plaintiff Clark testified that when he called for the shipment he told the defendant's representative "what the stuff was and what I

wanted with it, and said I could not operate without it. . . . I said there has got to be something done about it; that I have run without that machinery as long as I can." He testified that the agent promised then and afterwards to make diligent search and immediate delivery, and that by reason of that express promise, and only on that account he continued to operate the mill in its defective condition until finally he was driven to wire for a new shipment by express.

It was in evidence for the plaintiffs that by reason of the defective condition of the machinery, owing to the lack of these repairs, the daily output of the mill was greatly reduced and that they were at the expense of an extra man.

This action is brought to recover the cost of the shipment, which the court allowed, and the damages for the diminished output and extra labor and such other tangible, calculable, and reasonably certain damages as resulted directly from the representation, relied on by Clark, that the shipment had been received and would be delivered, up to the receipt of the substituted shipment. This last item the court instructed the jury to disallow.

The plaintiffs are not seeking to recover the profits which the mill would have made, but the direct, tangible damages under the ruling in *Furniture Co. v. Express Co.,* 148 N. C., 87; *s. c.,* 30 L. R. R. (N. S.), 486 and notes; *Lumber Co. v. R. R.,* 151 N. C., 23; *Peanut Co. v. R. R.,* 155 N. C., 148. The precise measure of damages is not before us, because the court below instructed the jury to allow no damages except the value of the shipment, with interest thereon and the freight they had paid. In this there was error.

The defendant's brief states that the court so ruled because the plaintiff Rawls could not recover because he had sold out the mill to Clark before the shipment arrived, and that Clark could not recover for the reason that he had not made the contract with the railroad company.

When, as Cervantes tells us, the illustrious Sancho Panza was Governor of Barataria, the following question was submitted to him for judgment. There was a bridge as to which the lord of the river had made a regulation that whoever would pass over the bridge should "upon his oath declare his purpose in crossing it. If he swore the truth, he could pass on; but if he swore false, he should be instantly hanged. One day a certain traveler declared on his oath that he had come to be hanged on the gallows. The predicament was thus presented that if he swore the truth, he could not be hanged; yet if he was not hanged, he had not sworn the truth." It is not necessary to give the wise decision then made. The defendant evidently thinks that the plaintiffs are in the same dilemma; that the plaintiff Rawls cannot recover because he did not own the mill when the damage was done, and

that the plaintiff Clark cannot recover because he did not make the contract of shipment.

But such predicament does not exist here. The defendant falsely represented to Clark that the machinery was there, and thereby delayed him, who, as it knew, was then the assignee of the bill of lading and also the owner of the mill, from ordering a new shipment, whereby Clark was injured in the operation of the mill.

Clark also testified: "I knew this stuff had been ordered; knew it would be according to our bargain. I bought the mill with the understanding that the stuff ordered was to be a part of it."

The plaintiff Clark was entitled to recover, as he did, the value of the shipment as assignee of the bill of lading and the freight he had paid thereon, and he was also entitled to recover for the negligence and misrepresentation of the defendant's agent in representing that the shipment was there and that it would be looked up and delivered to him, and the defendant was liable to him for the tangible direct loss sustained by Clark, who, relying upon said representation, was induced to delay ordering another shipment of these needed repairs. The defendant by its negligence and misstatement caused damage and loss in the operation of the mill, if the jury believe the evidence. This loss was sustained either by Rawls or Clark, and it is immaterial, so far as the defendant is concerned, which, for both are parties plaintiff and the judgment will be a protection against any further action for the damage it has caused.

The court seems to have misconceived the ground of the plaintiff's action, and in his instruction to the jury there was

Error.