[No. 15323.   Department One. July 23, 1919.]

# C. P. DICKEY, *Personally and as Administrator etc.,* *Respondent,* v. ALASKA PACIFIC FISHERIES, *Appellant.*[1]

SALES (154)—DAMAGES (70)—DELAY.  Damages for delay in performing a contract to deliver piles at a certain time, time being of the essence of the contract, do not include, as within the reasonable and natural consequence of the delay, damages from conditions in Alaska not called to plaintiff's attention, but will be confined to demurrage paid the railway company on waiting cars and to the damages caused by the detention of defendant's scow at the loading point for lack of piles to load; there being no information to plaintiff that any further loss would be caused by the delay.

Cross-appeals from a judgment of the superior court for King county, Ronald, J., entered December 23, 1918, upon findings in favor of the plaintiff, in an action on contract, tried to the court.   Modified.

*C. H. Hanford,* for appellant.

*Million & Houser* and *James W. McBurney,* for respondent.

TOLMAN, J.—Both parties having appealed from the judgment below, they will be referred to as plaintiff and defendant.   On December 28, 1917, these parties entered into a written contract by the terms of which the partnership of Angevine & Dickey, now represented by plaintiff, agreed to furnish 1,630 piles of certain specified dimensions, to be delivered on board cars at Darrington, Washington, on or before February 28, 1918, time being declared to be of the essence of the contract; the piles to be inspected and accepted by defendant at the time and place of loading, and payment to be made at the contract price, from time to time, with weekly settlements.   At the time fixed by

[1] Reported in 182 Pac. 595.

the contract for complete delivery, only about one-third of the piles had been delivered, and the remaining two-thirds were delivered from time to time up to about April 24, 1918. Plaintiff alleges that the piles so delivered amounted in value, determined by the contract price, to $26,312.17, and admits the receipt of payments on account to the extent of $21,000 only, and demands judgment for the balance.

Answering plaintiff's complaint, the defendant denied the receipt of piles under the contract in excess of the value of $26,124, pleaded payments on account aggregating $22,374.92, and, by way of counterclaim, affirmatively alleged, that it was the owner of and operating certain salmon canneries in Alaska, depending for the supply of fish to be canned being obtained through the use of fish traps, and that it required for its business during the fishing season of 1918, the piles contracted for; that the fishing season is of short duration, and it is necessary to prepare and set the traps for which said piles were required in advance of the time when the salmon commence to run; that considerable time was required for the transportation of the piles to the location of the fish traps in Alaska; all of which facts were known to and considered by the parties at the time of the making of the contract; and that it was then known and understood that the failure to deliver the piles within the period specified in the contract would cause serious damage to the defendant; that the piles were not delivered within the time specified in the contract, there being a delay of nearly two months in completing the deliveries; that, by reason of such delay on the part of the contractors, cars were detained at the loading station, for which the defendant was obliged to pay the railway company demurrage amounting to $111.24; that for the transportation of the piles to Alaska, defendant chartered

a scow at an expense of $20 per day; and in the month of April such scow was detained at Everett, waiting to receive the last cargo of said piles, for a period of twenty-two days in excess of the time which would have been sufficient for loading if the load had been ready; that defendant sent a tug from Ketchikan, Alaska, to Everett at the time when said scow should have been loaded, for the purpose of towing the scow with its cargo to Alaska, but the scow not being loaded, as it should have been, it was necessary for the tug to return to Alaska without a tow, and to charter another tug to take said scow and its cargo to Alaska when it was finally loaded; that defendant's loss thereby was the value of the use of the tug first mentioned for sixteen days; that defendant provided a pile-driver with equipment and crew for driving said piles in its work of constructing fish-traps, and that said tug was required for use as a tender in connection therewith, and by reason of its absence the pile-driver and its crew were necessarily idle during the whole of said sixteen days, whereby defendant sustained an additional loss amounting to the further sum of $1,600; that another scow was chartered by the defendant and used for the transportation of a cargo of said piles from Everett to Alaska, for which $20 per day was paid for the time she was in use and until returned to Everett, and after unloading in Alaska, because of the lack of an available tug, said scow was detained for a period of twenty-one days, which delay would not have occurred if the piles had been delivered according to contract; that all of said losses, and the detention of the tug, the pile-driver and crew and the two scows, were entirely caused by the failure of the plaintiff to deliver said piles within the time stipulated in the contract. The prayer of the answer is that plaintiff take nothing, that the defendant have judgment for the excess of its

damage over the total purchase price remaining unpaid for all piles delivered, for costs, and for general relief.

Plaintiff, by reply, denies the affirmative matters set forth in the answer, and alleges that, while plaintiff was in the performance of the contract, at the instigation and request of the defendant, the plaintiff took another and entirely separate contract to supply piles to the Northwest Fisheries Company, which new and additional contract was taken only after plaintiff had been assured by the defendant that the defendant would not be ready for the last cargo of piles until the 20th day of April, and had it not been for the action and conduct of the defendant pleaded, plaintiff would have been ready and able to deliver all of said piles as rapidly as they were required by the defendant.

The trial court by its judgment allowed plaintiff the full amount claimed for the piles, found that payments had been made on account to the amount of $22,333.78, allowed the amount claimed for demurrage paid the railway company, found that barge No. 8 was detained in Alaska for a period of nineteen days, barge No. 11 was detained at Everett for a period of nineteen days, that defendant was entitled to damages at the rate of $20 per day for each barge, and offset the sum of $760 on that account, entering its judgment in favor of plaintiff and against defendant for $3,215.

The questions involved are principally questions of fact, and we have carefully examined the evidence with a view of determining whether or not in any respect it preponderates against the findings of the trial court. After a most careful consideration, we are forced to the conclusion that there is no competent evidence in the case proving, or tending to prove, that the plaintiff delivered piles to the defendant of any greater value than the sum of $26,124. We are satis-

fied that the demurrage paid the railway company was properly allowed, and, also, that barge No. 11 was delayed at Everett for a period of nineteen days, as found by the trial court, at an additional expense to defendant of $20 per day, or a total of $380. The evidence as to the detaining of barge No. 8 in Alaska is in no respect clear or satisfactory; and it appears by the testimony, without contradiction, that defendant had at all times a supply of piles on hand in Alaska; that its work was in no respect delayed there by lack of piles; and that the detaining of scow No. 8, if it was detained, was due, like the going back of the tug without a tow, and the idleness of the pile-driver for lack of a tender, to matters and causes which could not have been within the contemplation of the parties at the time of the making of the contract. Nor does the evidence preponderate against the finding of the trial court that the defendant did not suffer loss by reason of these last mentioned matters.

"Damages Arising Out of Special Circumstances.— In addition to general damages, the injured party is entitled to recover special damages which arise from circumstances peculiar to the particular case, where those circumstances were communicated to or known by the other party at the time the contract was made; that is, he may recover such damages as are the reasonable and natural consequences of the breach under the circumstances so disclosed, and as may reasonably be supposed to have been in the contemplation of both parties. In such case the special circumstances become an implied element of the contract, and of the duty thereby imposed. In order to recover special damages under this rule, however, it must appear that at the time of the making of the contract the defendant had reasonable notice of the special conditions rendering such damages the natural and probable result of such breach. Otherwise the damages recoverable will be limited to those resulting from the ordinary and

obvious purpose of the contract. The damages resulting by reason of their existence are disallowed in such case, not because they are uncertain, nor because they are consequential or remote, but because they cannot be fairly considered to have been within the contemplation of the parties when the contract was made.'' 8 R. C. L., p. 459, § 27.

Since conditions in Alaska were at no time called to plaintiff's attention, and no notice was given that defendant would or might suffer anything other than the ordinary damages, and since there is no evidence that plaintiff, at the time of making the contract, or at any other time, had any information that loss would be occasioned by delay in delivery beyond the damage caused by the detaining of the scow at Everett or lack of piles for use, and since defendant had piles on hand at all times in advance of its needs, we conclude that, under the facts of this case, no allowance should have been made beyond $20 a day for nineteen days, or $380, covering the time of the detention of the scow at Everett. Nor do we think the plaintiff's attempt to confess and avoid can be sustained. Plaintiff's contract with the Northwest Fisheries Company was made before the occurrence of the conversation with the witness Nelson, in which he informed plaintiff that the scow would be delayed fifteen or twenty days after April 1 in returning to Everett for the last load of piles, and we are convinced that such conversation had nothing to do with the taking on of the new contract, and that plaintiff's delay in making delivery was not caused or induced by such conversation.

The judgment appealed from should be modified by fixing the value of the piles delivered at $26,124, deducting therefrom, first, the payments on account, of $22,333.78, then the demurrage of $111.24, and lastly, damages for the detention of the scow at Everett,

$380, and a judgment entered in favor of plaintiff and against defendant for $3,298.98, with legal interest from the time of the filing of the complaint. Neither party will recover costs on this appeal.

HOLCOMB, C. J., MACKINTOSH, MITCHELL, and MAIN, JJ., concur.