BUILDERS SUPPLY AND EQUIPMENT CORPORATION, Inc., v. W. C. GADD and J. T. PIGG.

(Filed 3 May, 1922.)

1. Contracts — Breach — Damages — Speculative Damages—Vendor and Purchaser.

A party breaching his contract may be liable in damages to the other party not only for loss sustained, but for gains prevented, when not purely speculative or conjectural or measured by an indefinite or fanciful conception as to what they would have been had the breach not occurred, but are the necessary and proximate result of the breach, and can be shown with reasonable certainty. The English rule of *Hadley v. Baxendale*, 9 Exch., 341; 156 Eng. Rep., 155, given, approved, and applied.

2. Same—Evidence—Nonsuit—New Trial.

In an action to recover a balance of the purchase price of certain implements used in excavations, there was evidence, in support of defendant's counterclaim, that the plaintiff had failed to send with these implements certain parts essential for their working capacity; that the plaintiff knew their proposed use by the defendant and the time when and circumstances under which they were to be used, and in consequence of the missing parts it was necessary for, and the defendant was compelled to use extra horses and drivers, which caused the defendant to be put to an expense in a certain amount he would not otherwise have incurred: *Held*, sufficient upon plaintiff's motion as of nonsuit to take the case to the jury, and the granting of this motion was reversible error entitling the defendant to a new trial upon his counterclaim.

3. Same—Negligence—Waiver—Questions for Jury.

Where there is evidence that the plaintiff has breached his contract in failing to deliver essential parts to excavating implements to the purchaser's loss, and there is evidence that the defendant knowingly accepted the imperfect implements at plaintiff's urgent request and promise to furnish the missing parts in time, and when others could not have been bought on the market: *Held*, the questions as to whether the defendant was negligent in his efforts to minimize his loss; or whether his acceptance of the implements after the alleged breach of contract amounted to a waiver, were for the jury, and not those of law which arise upon undisputed facts.

APPEAL by defendant from *Shaw, J.,* at October Term, 1921, of MECKLENBURG.

Plaintiff sued to recover $447.50 as balance due for purchase of ten wheel scrapers and other implements. Defendant Gadd, successor of Gadd & Pigg, pleaded payments with which he said he had not been credited, and alleged that the plaintiff had made an entire contract and sold the defendant certain equipment required in contracts for excavating and grading, that the plaintiff knew the purpose for which the implements were to be used, and failed to deliver certain essential parts of said equipment, in consequence of which the defendant suffered financial loss. He pleaded a counterclaim for the loss so incurred. At the close of the defendant's evidence his Honor granted a motion to dismiss as to the counterclaim. The defendant excepted. The issue was answered by the jury, and judgment was given for the plaintiff. Defendant appealed.

*Frank H. Kennedy for plaintiff.*
*J. C. Newell and William L. Marshall for defendant.*

ADAMS, J. The opinion of *Alderson, J.,* in *Hadley v. Baxendale,* (9 Eng. Exc., 341), has been generally accepted as an accurate statement of the rule applicable to the measurement of damages for breach of contract.

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.

Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in contemplation the amount of injury which would arise generally, and. in the great multitude of cases not affected by any special circumstances, from such a breach of contract." 9 Exch., 341; 156 Eng. Rep., 151.

This case approves two rules:  (1) If the particular contract cannot be distinguished from the great mass of similar contracts only such damages may be recovered as would naturally and generally result from the breach; (2) but if there are special circumstances communicated to or known by the other party at the time the contract is made, special as well as general damages may be recovered.    8 R. C. L., sec. 25 *et seq.*

Accordingly, where a person violates his contract he may be liable in given circumstances not only for losses sustained, but for gains prevented. Profits are not considered as an element of damages if purely speculative or conjectural, or measured by an indefinite or fanciful conception as to what they would have been had there been no breach of the contract. *Boyle v. Reeder,* 23 N. C., 607; *Foard v. R. R.,* 53 N. C., 236; *Roberts v. Cole,* 82 N. C., 293; *Jones v. Call,* 96 N. C., 337; *Lumber Co. v. Iron Works,* 130 N. C., 584; *Machine Co. v. Tobacco Co.,* 141 N. C., 285.   But lost profits are a proper element of damages where such loss is the necessary and proximate result of the breach and can be shown with reasonable certainty.   *Mace v. Ramsey,* 74 N. C., 11; *Oldham v. Kerchner,* 79 N. C., 106; *Willis v. Branch,* 94 N. C., 143; *Mills v. R. R.,* 119 N. C., 694; *Neal v. Hardware Co.,* 122 N. C., 105.

In *Furniture Co. v. Express Co.,* 148 N. C., 89, *Hoke, J.,* recognizing the uncertainty of estimating the profits of a going enterprise which are dependent on the varying cost of labor and material and the fluctuations of the market value of the product, states also the principle which is often applied in case of the delayed shipment of goods:  "Where the goods shipped have a market value, and there is nothing to indicate the specific purpose for which they were ordered, these damages are usually the difference in the market value of the goods at the time fixed for delivery and that when they were in fact delivered.   We have so held in the case of *Development Co. v. R. R.,* 147 N. C., 503, and *Lee v. R. R.,* 136 N. C., 533, is to the same effect.   When, however, the goods are ordered for a special purpose or for present use in a given way, and these facts are known to the carrier, he is responsible for the damages fairly attributable to the delay and in reference to the purpose or the use indicated.   And it is not necessary always that those facts should be mentioned in the negotiations, or in express terms made a part of the contract, but when they are known to the carrier under such circumstances, or they are of such a character that the parties may be fairly supposed to have them in contemplation in making the contract, such special facts become relevant in determining the question of damages." *Lumber Co. v. R. R.,* 151 N. C., 23; *Peanut Co. v. R. R.,* 155 N. C., 149; *Rawls v. R. R.,* 173 N. C., 6.

Applying these principles to the case at bar, we think his Honor should have submitted to the jury the evidence relating to the defend-

ant's counterclaim. There was evidence tending to show that the plaintiff failed to ship several of the articles included in the contract; that it knew the particular purpose for which they were to be used and when the work was to be commenced, and promised to have all the articles ready for the defendant at that time; that shipment was delayed several months, and the wheelers, when delivered, were not equipped with the draft hooks; that plaintiff's officers requested the defendant not to order the delayed articles from another—"Every day they would take it up with me, and they would say, 'Don't order it, we will have them here for you'"—and, in addition, that the wheelers could not be bought on the market at that time. There was evidence tending also to show the loss suffered by the defendant in the use of the drag pans instead of the three delayed wheelers—that if the contract had been performed he would have saved the cost of horses and drivers for three extra drag pans, and would have moved more dirt. Of course, with reference to the motion to nonsuit, it is not necessary to consider evidence in contradiction or rebuttal.

In the circumstances disclosed by the record we cannot hold as an inference of law that the defendant was negligent in his efforts to minimize his loss, or that he waived his right of action by accepting the implements after the alleged breach of the contract. It is true that after the breach a party may waive his right to damages and insist on performance; but the mere acceptance of goods after default does not in all cases amount to a waiver or estoppel. 40 Cyc., 259. Waiver is a matter of law to be determined by the court when the facts are not disputed. *Dula v. Cowles*, 52 N. C., 290. But in this case the questions to which we have referred, considered in connection with the defendant's evidence, were matters for the determination of the jury under the instructions of the court.

The order dismissing the defendant's counterclaim is reversed and a new trial granted. This will be certified.

New trial.