## RALEIGH IRON WORKS COMPANY v. LEE COUNTY COTTON OIL COMPANY.

(Filed 3 November, 1926.)

**1. Contracts—Damages—Notice of Loss—Contemplation of Parties.**

Where a machine shop has represented that it is fully equipped and prepared to repair certain boxes used in the manufacture of cotton-seed oil, and knew the purpose for which these boxes were wanted, and makes the repairs so that they were so faulty and defective as to make it impossible to use them without loss of time and greatly increased expense of manufacture: *Held,* the damages caused by such increase of cost are reasonably considered as having been within the contemplation of the parties, and are recoverable by the party sustaining them.

**2. Same—Speculative Damages.**

> Where damages are recoverable for the faulty repair of machinery or implements used in the manufacture of certain products, the loss of time and increased cost of labor in their use as replaced, is an element of damages.

CIVIL ACTION, before *Barnhill, J.,* at March Term, 1926, of WAKE.

The plaintiff, W. T. Harding, is engaged in the business of manufacturing founders, and machinists, under the name and style of Raleigh Iron Works Company. The defendant is engaged in the business of manufacturing oil from cotton seed, and also in the manufacture of cotton-seed meal.

Oil is manufactured from cotton-seed meal by machinery, and an essential part of such machinery is the oil press, columns, follow blocks and the press boxes, in which the oil is pressed from the seed.

The evidence tended to show that on or about 11 June, 1923, the defendant wrote the plaintiff, desiring to know if plaintiff could do certain repair work on steel columns and press boxes. The plaintiff replied to this letter on 12 June, stating, in substance, that he could do the work, and, among other things, was the following statement: "But feel quite sure we could handle that also, as we have the best equipped shop in the State for general repairs. Send your work to us, and we will do it well and at a fair price consistent with same." Thereafter, the parts of machinery referred to were delivered to the plaintiff for making the necessary repairs.

Witness Barringer, secretary and manager of defendant, testified: "I talked with Mr. Harding before I sent the work. He told me he had equipment to do the work, and that he did work for the Raleigh Oil Mill. . . . I made two trips to see Mr. Harding to get him to hurry up the work. I told him that the season was approaching, and that unless I got it I would be handicapped in getting the mill started, and he promised to get them back in a few days." There was no further evidence tending to show that the season for the operation of an oil mill begins about 11 September, and that the defendant received the first car of seed about 8 September.

The plaintiff brought suit against the defendant for the sum of $761.36 for services in making repairs to said machinery. The defendant filed answer, denying that it was indebted to the plaintiff in any sum, and setting up a counterclaim for damages for $6,800. The basis of defendant's counterclaim was—that when the plaintiff delivered the repaired machinery to defendant and it was installed in the factory, it was discovered that the repairs were faulty and defective to such an extent as to make it impossible to use the press boxes for the purpose for which they were intended; that the repairs were not done in a

workman-like manner, in that the sides of the press boxes were bent, and negligently and improperly assembled and riveted, and that, as a result thereof, it was with great difficulty and loss of time and increased labor and expense that the operations of defendant's mill could be carried on.

The following issues were submitted to the jury: (1) Is the defendant indebted to the plaintiff as alleged in the complaint? (2) If so, in what amount? (3) Did the plaintiff contract with the defendant to repair the mill presses in the manner alleged in defendant's counterclaim? (4) If so, did plaintiff breach said contract? (5) And, if so, what damages is defendant entitled to recover by reason thereof? The jury for its verdict answered the first issue, no; the second issue, none; the third issue, yes; the fourth issue, yes; and the fifth issue, $1,000.

From judgment for the defendant upon its counterclaim for $1,000 plaintiff appealed.

*J. C. Little, Manning & Manning for plaintiff.*
*W. B. Jones, Seawell & McPherson for defendant.*

BROGDEN, J. The material exceptions in the record present the question of the proper measure of damages. The defendant offered evidence tending to show that the side walls of the presses were negligently warped in the process of repairing them, and that this defect greatly increased the cost of operating the plant. The testimony was, "We have a cake knife to remove the cake from the boxes. We give a little twist and that loosens it up, and we push it out. After the machinery was sent back it would take two knives and probably a man or two before we could get the cake out of the boxes, and when we did get it out it was torn to pieces. It took ten or eleven days to make a tank of oil instead of five and a half, which it would take normally."

The items of damage claimed by the defendant consisted of extra labor in operating the machines after the repair, decreased output, and also increased cost per ton of oil by reason of poor extradition of the cakes referred to.

The plaintiff contends that the damages claimed by the defendant were not such damages as were within the reasonable contemplation of the parties.

So that, the merits of the controversy present two propositions:

1. Does the evidence warrant the award of special damages?

2. What are the proper elements of such damages?

*Adams, J.,* in *Builders v. Gadd,* 183 N. C., 447, referring to the case of *Hadley v. Baxendale* (9 Eng. Exch., 341), says: "This case approves two rules: (1) If the particular contract cannot be distinguished from

the great mass of similar contracts only such damages may be recovered as would naturally and generally result from the breach; (2) but if there are special circumstances communicated to or known by the other party at the time the contract is made, special as well as general damages may be recovered." · And, further, "And it is not necessary always that those facts should be mentioned in the negotiations, or in express terms made a part of the contract, but when they are known to the carrier under such circumstances, or they are of such a character that the parties may be fairly supposed to have them in contemplation in making the contract, such special facts became relevant in determining the question of damages."

Now, when are special damages reasonably supposed to have been in contemplation of both parties? (1) When there is express notice that special damages will reasonably result from the breach of the contract. *Lumber Co. v. Iron Works,* 130 N. C., 584; *Rawls v. R. R.,* 173 N. C., 6; *Builders v. Gadd,* 183 N. C., 447. (2) Notice may be implied from the inherent nature and character of the article, together with the attendant circumstances. *Lumber Co. v. R. R.,* 151 N. C., 23; *Pendergraph v. Express Co.,* 178 N. C., 344. (3) When the facts and attendant circumstances are of such character that the parties may be fairly supposed to have known that the property was designed for a special purpose or for a special use. *Peanut Co. v. R. R.,* 155 N. C., 149; *Builders v. Gadd, supra.*

In the case now under consideration there was evidence of express notice to the plaintiff of the particular use and function of the machinery in question. The general superintendent for the plaintiff testified: "I know that there was a quarter of an inch difference in the width at one end from the width at the other end. They are made slightly larger at one end so that the cake can be pushed out. If they were spread out in the center the cakes could not be pushed out, without difficulty."

C. P. Finnell, machinist for the plaintiff, who performed a part of the labor upon the machinery, testified: "I have seen machinery like this in operation. If the angles are not put back straight it is hard to get the cakes out after they are pressed."

The secretary and treasurer of the defendant testified: "I made two trips to see Mr. Harding to get him to hurry up the work. I told him that the season was approaching, and that unless I got it I would be handicapped in getting the mill started, and he promised to get them back in a few days."

There was, therefore, in this case ample notice of the special purpose for which this machinery was to be used and of relevant facts and circumstances which would warrant special damages upon breach of the contract.

This is not an action to recover loss of profits, but to recover for additional labor and increased cost of operation. These elements of damage, in cases where special damages are allowable, have been fully approved by the Court. Damages accruing for loss of time, board bills and railroad fare were approved in *Pendergraph v. Express Co.,* 178 N. C., 344. The reduced output of a mill and the expense of extra labor have also been approved as items of damage. *Rawls v. R. R.,* 173 N. C., 6. Indeed, in the *Rawls case, supra,* the Court ordered a new trial by reason of the fact that the trial judge instructed the jury to disallow such damages. The trial judge charged the jury in clear and express language that it was the duty of the injured party to do all that could reasonably be done to reduce or minimize the damage after the defects had been discovered.

In *Pendergraph v. Express Co., supra, Clark, C. J.,* says: "It is true that it was incumbent upon the plaintiffs to lessen the loss accruing from the negligence of defendant, and this the jury seems to have considered, and the court so charged."

Upon the whole record, we conclude that the case has been tried according to clearly established rules of law, and the judgment is upheld.

No error.