## GULF STATES CREOSOTING CO. v. LOVING et al.

## SAME v. TIDEWATER CONST. CORPORATION et al.

### Nos. 4737, 4738.

Circuit Court of Appeals, Fourth Circuit.

May 22, 1941.

William B. Campbell, of Wilmington, N. C. (L. J. Poisson and E. K. Bryan, both of Wilmington, N. C., on the brief), for appellant Gulf States Creosoting Co.

Kenneth C. Royall, of Raleigh, N. C., for appellees Loving and others.

Kenneth C. Royall, of Raleigh, N. C., and Charles E. Ford, of Washington, D. C. (Philip W. Murray, of Newport News, Va., on the brief), for appellees Tidewater Const. Corp.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

These companion cases grow out of two contracts of Gulf States Creosoting Company, defendant below, to furnish creosoted piling and lumber to the Tidewater Construction Corporation and to T. A. Loving, trading as T. A. Loving & Company, later T. A. Loving & Company, a corporation, respectively, to enable them to construct certain parts of the Albemarle Sound Bridge which they had agreed to build under contracts with the State Highway Commission of North Carolina. The defendant failed to comply with its contracts in regard to the delivery of the material, and the plaintiffs sued for damages, crediting upon their claims the balances due the defendant for goods delivered and not paid for. In the District Court the Creosoting Company defended on the ground, amongst others, that it was not responsible for the delays in delivery which occurred, but this issue was decided against it by the Special Master and the District Judge, and is not pressed in this court. The principal contentions here are that the District Court

erred (1) in finding the terms of the contracts with regard to deliveries, and (2) in failing to hold that the defendant was not responsible for the damages claimed since they were special damages, not in the contemplation of the parties. In the Loving case, the additional defense is made that no recovery should be allowed because Loving assigned the contract without the consent of the defendant. (3) The defendant also attacks the findings of the court with respect to specifications of damage.

The report of the Special Master finding substantial damages in favor of the plaintiffs was adopted in its entirety by the District Judge in the Loving case, and with one correction, hereinafter discussed, in the Tidewater case. The Master found that the Creosoting Company, through an agent who negotiated the contract between it and the Tidewater Company, had full knowledge of the State Highway Commission's plans for the bridge, and in fact had assisted in the preparation of the specifications; that the plans showed the lengths of piling and dimensions of lumber required; that the agent was informed that the Tidewater Company would need deliveries in a uniform and balanced schedule and intended to finish the job in 1937; and that with this knowledge, the defendant, on January 25, 1937, quoted prices for the piling and lumber, and asserted its ability to deliver the material as fast as needed. On February 1, 1937, the defendant gave the Tidewater Company a formal quotation for the material, wherein it was stated that changes or cancellation of any order could be made by mutual consent. On February 4, 1937, this quotation was revised, and on February 5, 1937, was accepted as satisfactory by the Tidewater Company in a letter which contained the following paragraph: "It is understood that you agree to begin shipment within not more than seventy-five days from date of this letter and that you agree to complete the order in its entirety, within two hundred days from this date. This guarantee for delivery is based upon our furnishing you a complete list of the piling and lumber requirements on or before February 22, 1937." This delivery period was modified as the result of subsequent correspondence in which the quantities, prices and terms of sale were fixed, and it was finally agreed that shipments should begin on May 1, 1937, should be completed in two hundred days from March 2, 1937, that is, on September 18, 1937, and should

be made in a certain order of lengths and upon a uniform and balanced schedule.

The Master reached the conclusion from the evidence that such was the agreement between the parties. The defendant does not deny that such an agreement was formed, but contends that certain modifications of the contract took place after March 10, 1937, whereby the beginning of the period of the two hundred days was postponed. There is, however, no foundation of fact for the argument. It is based chiefly upon a revision in the lengths of piling required, which was sent by the Tidewater Company to the defendant on June 4, 1937, in order to comply with certain changes made by the State Highway Commission in the structure of the bridge occasioned by unexpected conditions on the work. The change was made by the State Highway Commission under the authority of the bridge contract, of which the defendant had notice, and the defendant accepted the change without protest. No request was made by the defendant for a modification of the period of delivery, and there is no reason to believe that such a modification was contemplated by the parties. Other modifications of the contract were equally immaterial.

A similar defense in the Loving case is likewise lacking in merit. The Master made similar findings as to the knowledge of the defendant of the plans and specifications of the bridge contract, and the purpose of Loving to finish the bridge in 1937, and held that the parties entered into a contract on March 10, 1937, wherein the defendant agreed to begin shipping on May 1, 1937, to make the shipments in a certain order of lengths upon a uniform and balanced schedule, and to complete the deliveries by September 18, 1937. The defendant contends that this period was extended because on March 30, 1937, the parties agreed to special terms of payment for the material, and on April 30, 1937, fixed for the first time the shipping points for the first carloads of material to be delivered. The complete answer to this contention is that the defendant accepted the changes, neither of them affected the defendant's ability to make the deliveries as originally agreed, and nothing in the evidence indicates that the parties contemplated a change in this respect.

The defendant also contends that there can be no recovery under the Loving contract between the defendant and T. A.

Loving, individually, trading as T. A. Loving & Company, because the latter, without the knowledge or consent of the defendant, assigned the contract to T. A. Loving & Company, a corporation, on November 12, 1937. On that date he formed the corporation of that name and transferred to it all the assets and rights of his contracting business, the corporation assuming all the liabilities thereof. The position of the defendant is that despite its breach of contract and the damages that flowed therefrom, neither Loving nor the Loving Company can recover in this suit. The argument runs as follows: The defendant entered into the contract in reliance upon the character and solvency of Loving individually, and hence the contract could not be assigned so as to bind the defendant without the defendant's consent. It was in fact assigned without the defendant's knowledge or consent, and the shipments were continued in the belief that Loving was the recipient of the material, whereas they were received and used by the corporation. Thereby the defendant was deprived of its right to deal with Loving, and of its right to refuse to go on with the shipments after the assignment. The plaintiffs bring the pending suit as a unit, claiming damages and admitting liability for the unpaid bills as a single organization. The Special Master, fixing the total damages suffered at $52,346.98, and the total credits for goods shipped at $34,160.20, recommended a judgment for the plaintiffs of $18,186.78. But he made no apportionment of the rights or obligations between the two plaintiffs. He found that the major part of the damages was suffered after the assignment, but he made no attempt to ascertain the amount thereof, and hence there can be no judgment even for the damages incurred before the assignment on the theory that such damages were assignable, because the amount thereof has not been ascertained.

■ Clearly there is no merit in this argument, for the assignment of the contract affected neither the ability of the defendant to deliver the goods, nor the prospect of payment therefor in accordance with the contract. The Master found that the deliveries and payments were carried on, so far as the defendant was concerned, in the same way after, as before the assignment. The personal liability of T. A. Loving to pay for the goods delivered was in no way affected by the assignment.

Notwithstanding the corporation's assumption of liability under the contract, he remained personally obligated to pay for the goods which, without notice of the assignment, the defendant delivered to the new corporation of which Loving was the head. The added liability of the corporation to pay for the goods which it received was equally clear. The defendant itself recognized this situation by filing a counterclaim against both Loving and the corporation for the unpaid bills. The assignment was merely part of the transfer of assets to a corporation formed to take over a going business, and after the transfer, the same persons were in control. Under such circumstances, an assignment of a contract does not ordinarily fall within the rule that denies assignability where the personal element is a material factor. See 8 Fletcher on Corporations, § 4011; Walker v. Mason, 272 Pa. 315, 116 A. 305; Bradford & Carson v. Montgomery Furniture Co., 115 Tenn. 610, 92 S.W. 1104, 9 L.R.A.,N.S., 979.

It thus appears that the credit risk of the defendant was in no way increased by the transfer of the business. In addition, the defendant was protected by the surety bond given to the State Highway Commission by the Aetna Casualty & Surety Company, to secure the performance of the contract by T. A. Loving individually, and the payment by him for materials furnished him in the construction of the bridge. See § 3846 (v) of the North Carolina Code of 1935; Aderholt v. Condon, 189 N.C. 748, 128 S.E. 337. The Surety Company appears to have recognized the situation by voluntarily appearing in the pending suit to answer the counterclaim of the defendant.

■ Furthermore, it is important to note that the time for completion of deliveries on September 18, 1936 had passed, and the default of the defendant in its promises had occurred when the contract was assigned to the corporation on November 12, 1937. A cause of action for breach of contract had therefore already arisen, and it is not disputed that such a cause of action is assignable. 2 Williston on Contracts, § 412.

■ It is clear from every aspect of the situation that the defendant suffered no harm from the assignment of the contract, or from the joining of both Loving and the corporation as party plaintiffs in this suit, and the joint judgment rendered

in their favor. On this point the Special Master reached the following conclusion, with which we are in accord: "Second. That, upon the facts found in Finding of Fact No. 15, there was included in the assignment of the contract to the corporation plaintiff any right of action for damages arising out of the defendant's breach of contract; and that the defendant having breached its contract, resulting in damages heretofore found, and T. A. Loving as an individual and T. A. Loving and Company as a corporation being both parties plaintiff, it is immaterial to the defendant as to which of these plaintiffs recovers, or as to how they apportion the recovery between them, as a judgment in this case would work an estoppel as to both."

█ The rule of law is clear that contracts for the sale and purchase of merchandise, not involving a personal element or a relation of personal confidence, are assignable by either party. See Restatement of Contracts, §§ 151, 152; Boney v. Central Mut. Insurance Co., 213 N.C. 563, 197 S.E. 122; Vaughan & Barnes v. Davenport, 159 N.C. 369, 74 S.E. 967; Atlantic & N. C. R. R. Co. v. Atlantic & N. C. Co., 147 N.C. 368, 61 S.E. 185, 23 L.R.A., N.S., 223, 125 Am.St.Rep. 550, 15 Ann.Cas. 363; Guy v. Bullard, 178 N.C. 228, 100 S.E. 328; 2 Williston on Contracts, p. 1180, § 412. Compare, Arkansas Val. Smelting Co. v. Belden Min. Co., 127 U.S. 379, 8 S.Ct. 1308, 32 L.Ed. 246; Delaware County v. Diebold Safe Co., 133 U.S. 473, 10 S.Ct. 399, 33 L.Ed. 674; Burck v. Taylor, 155 U.S. 634, 14 S.Ct. 696, 38 L.Ed. 578; Florance v. Kresge, 4 Cir., 93 F.2d 784.

Having established the existence of the defendant's contractual obligations, the findings and conclusions of the Special Master relative to the extent of its liability may now be considered. In the Loving case, the contract called for the shipment of 1640 piles between May 1 and September 18, 1937, upon a uniform schedule in the order of their lengths. The defendant signally failed to comply with these requirements, only 472 piles being actually shipped by the latter date, and these not in proper order. Shipments were not completed until January 26, 1938. (It was found that if the defendant had shipped the piles in accordance with the contract, the plaintiffs would have been able to complete their part of the bridge by January 17, 1938, but that, due to the default of the defendant, they were unable to finish the job until July 13, 1938.) This period was prolonged by the action of the State Highway Engineer who exercised the power vested in him by the plaintiffs' contract with the State, and ordered a partial suspension of work from December 17, 1937, until March 31, 1938, because he felt that the cold weather made it inadvisable to pour the concrete on the deck of the bridge. The master found that on account of this delay in the completion of the job, and because of the slow and disorganized fashion in which the defendant shipped the piles, the plaintiffs suffered losses totalling $52,346.98, this sum being comprised of the following items:

| | |
|---|---:|
| Added salaries and wages | $15,743.06 |
| Added construction costs during winter months | 2,086.05 |
| Interest on retained percentages of the contract price | 1,415.03 |
| Expense in efforts to obtain deliveries in accordance with the contract | 707.33 |
| Extra expense of Loving | 975.00 |
| Increase in unemployment insurance rate | 410.16 |
| Inefficiency of employees caused by delays in delivery | 2,339.11 |
| Additional overhead | 6,993.52 |
| Ownership expense of equipment | 21,677.72 |
| | $52,346.98 |

The Master further found that the defendant and its representatives had full knowledge of the State Highway Commission's plans, that it had assisted in the preparation of the specifications; that it was informed of the plaintiffs' intention to complete the work before winter set in; and that it knew the difficulty attendant to pouring concrete in cold weather might cause operations to be suspended if the work was not finished by winter. Upon this state of facts, the Master held that the items of damages which the plaintiffs had suffered were within the contemplation of the parties when the contract was made, and that the defendant was liable therefor. Finding also that the defendant was entitled to recover $34,160.20 on its counterclaim, the Master held that the plaintiffs were entitled to a judgment in the sum of $18,186.72.

In the Tidewater case, there was a similar breach of contract which led to much

the same result. On September 18, 1937, the defendant had actually shipped only 552 of the 1604 piles called for by the contract, and these had not been sent properly in the order of their lengths. Shipments were not completed until November 15, 1937. The Master found that while the plaintiff was unable to complete its part of the bridge until August 13, 1938, the job would have been done by December 31, 1937, had it not been for the defendant's failure to carry out its contract. As in the Loving case, the State Highway Engineer caused operations to be suspended during the cold weather, in this instance, the "shut-down period" being from December 18, 1937, until March 23, 1938. The Master found that due to the delay that the plaintiff had suffered damages to the extent of $42,874.96, made up of the following items:

| | |
|---|---:|
| Costs of extra supervisory employment | $ 3,613.64 |
| Costs of extra full time employees | 5,316.94 |
| Extra rental on barges | 1,742.50 |
| Interest on retained percentages of the contract price | 1,447.74 |
| Pine piles purchased from Atlantic Creosoting Company and others | 3,372.90 |
| Cost of maintenance of the bridge and replacements | 5,047.69 |
| Demurrage | 614.00 |
| Extra employee at the Defendant's Wilmington plant to inform plaintiff of conditions | 600.54 |
| Increase in unemployment insurance rate | 541.69 |
| Builders risk insurance and marine insurance for the period of delay | 2,942.92 |
| Additional fuel for boats | 1,883.50 |
| Additional overhead | 5,330.09 |
| Ownership expense of equipment | 10,420.81 |
| | $42,874.96 |

The Master made findings of fact similar to those in the Loving case as to the knowledge of the defendant concerning plaintiff's contract with the State, the conditions under which it was to be performed, and the damages likely to result if the piles were not shipped on schedule. Therefore, as in the preceding case, the defendant was held liable for the losses sustained as the result of its default.

The District Court adopted the report of the Special Master in both cases in all respects save one. It discovered that due to inadvertence caused by the voluminous record, the Special Master had overlooked certain evidence in the Tidewater case which entitled the plaintiff to recover additionally $3,040.97, due to losses suffered because of the impaired efficiency of its labor resulting from the sporadic delivery of piles between May 5 and August 31. The court accordingly added this item of special damages to those already found by the Master, making a total of $45,915.93, for which the defendant was held liable. Finding that the defendant was entitled to recover $5,039.30 on its counterclaim, judgment was entered for plaintiff for $40,876.63.

The defendant contends that the District Court erred in allowing the items of damage above described in each of the two pending cases, because the damages claimed were special damages which were not within the contemplation of the parties when the contracts were made. The general rule as to the right to recover special damages is set out as follows in § 330 of the Restatement of Contracts, page 509: "§ 330. *Foreseeability of Harm as a Requisite for Recovery.* In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

In conformity with this doctrine, it is well settled in North Carolina and elsewhere that a defendant, who, at the time of the making of a contract, knew all the special circumstances and conditions attendant upon its execution, is liable for those injuries which at that time he had reason to foresee would be the probable result of his breach. Monger v. Lutterloh, 195 N.C. 274, 142 S.E. 12; Cary v. Harris, 178 N.C. 624, 101 S.E. 486; Story Lumber Company v. Southern Railroad Co., 151 N.C. 23, 65 S.E. 460; Pendergraph v. American Ry. Express Co., 178 N.C. 344, 100 S.E. 525; Brown v. East Carolina R. Co., 154 N.C. 300, 70 S.E. 625; Williston on Contracts, 1937 Ed. § 1356. In such

a case the defendant will be held liable not only for damages actually within the contemplation of the parties, but also for damages which the circumstances make probable. Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 23 S.Ct. 754, 47 L.Ed. 1171; Williston on Contracts, 1937 Ed. § 1356.

It is plain that the pending cases belong to the class in which special damages are allowable. The defendant does not seriously challenge the finding that it had full knowledge of the purpose of the plaintiffs to use the materials to be furnished by it in the performance of their contracts with the State. Nor does the defendant deny that it knew that failure on its part to deliver the materials as agreed would be likely to delay the plaintiffs in their construction work and cause them serious loss; nor does defendant deny that such loss has actually taken place. The position of the defendant was analogous to that of a subcontractor, with full knowledge of the consequences likely to follow from a breach of its contractual obligations. For decisions bearing upon the responsibility of subcontractors under such circumstances to pay damages reasonably ascertainable from the facts, see Uhrich Millwork v. J. B. Brewster Co., 124 Kan. 579, 261 P. 561; E. A. Steininger Const. Co. v. Bates, 159 Ark. 416, 252 S.W. 618; General Contracting Corp. v. United States, 4 Cir., 70 F.2d 83; Builders' Supply Co. v. Gadd, 183 N.C. 447, 111 S.E. 771; Pender Lumber Co. v. Wilmington Iron Works, 130 N.C. 584, 41 S.E. 797; Brown v. East Carolina R. Co., 154 N.C. 300, 70 S.E. 625; Restatement of Contracts, § 331.

Under these rules, there can be no doubt that the following items of damages were properly allowed in the Loving case: (1) Added salaries and wages of straight time employees, including the expense of workmen's compensation, public liability and property damage insurance, and also of social security and unemployment insurance;[1] (2) added costs of construction during the winter months, including the injury done by storms to bridge and equipment;[2] (3) interest on percentages of the contract price retained by the State;[3] (4) expenses incurred in efforts to obtain deliveries in accordance with the contract;[4] (5) extra expenses of Loving, plaintiff's president, in looking after the bridge contract;[5] (6) increase in the unemployment insurance rate after January 1, 1938.[6]

Likewise, in the Tidewater case, the allowance of the following items was justified: (1) cost of extra supervisory employees and (2) of extra full time employees, including workmen's compensation and public liability insurance;[7] (3) extra rental on barges;[8] (4) interest on percentages of the contract price retained by the State;[9] (5) cost of piles purchased in the open market from the Atlantic Creosoting Company and others, which includes the expense undergone by plaintiff in procuring piles and having them creosoted by the Atlantic Creosoting Company;[10] (6) added cost of maintenance of the bridge and replacements, which includes items of extra labor costs and replacement of material caused by the shut-down, together with storage and rental expenses; (7) demurrage charges, caused by failure of defendant to ship piles according to a

---

[1] Added labor costs including unemployment and workmen's compensation insurance are a well-recognized item of damages in this type of case. Raleigh Iron Works Co. v. Lee County Cotton Oil Co., 192 N.C. 442, 135 S.E. 343; Brown v. East Carolina R. Co., 154 N.C. 300, 70 S.E. 625; Rawls v. Atlantic Coast Line R. Co., 173 N.C. 6, 91 S.E. 367; McCormick on Damages, § 165; Patterson, Builder's Measure of Recovery for Breach of Contract, 31 Col.L.Rev. 1286.

[2] Injury due to foreseeable weather conditions is a proper item of damages. Fairbanks, Morse & Co. v. Austin, 9 Cir., 288 F. 1.

[3] Clarke Construction Co. v. United States, 7 Cir., 290 F. 192.

[4] Foard v. Atlantic & N. C. Railroad Company, 53 N.C. 235, 78 Am.Dec. 277;

Rocky Mount Mills v. Wilmington & W. Railroad Company, 119 N.C. 693, 25 S.E. 854, 56 Am.St.Rep. 682; Restatement of Contracts § 336.

[5] Contractor is entitled to a reasonable allowance for his own time and services. United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168.

[6] McCormick on Damages, § 165. Patterson, op. cit., 31 Col.L.Rev. 1286.

[7] See Note 1, supra.

[8] Dickey v. Alaska Pac. Fisheries, 107 Wash. 633, 182 P. 595.

[9] Note 3, supra.

[10] This is not properly an item of special damages but seems to be the usual measure of damages allowed in the case of the breach of a contract to sell goods. Riley v. Carpenter, 143 N.C. 215, 55 S. E. 628; Jones & Co. v. Sanford, 163 La. 799, 112 So. 726.

uniform schedule;[11] (8) extra employee at defendant's Wilmington plant to inform plaintiff of conditions there;[12] (9) increase in unemployment insurance rate after January 1, 1938;[13] (10) builder's risk insurance and marine insurance; and (11) additional fuel for boats.[14]

■■ The facts as to these damages are not disputed. Indeed the defendant has offered no evidence whatsoever on the subject of damages in either case. All of the items hereinbefore particularized represent losses directly caused by the defendant's delays. These losses are not remote or conjectural, but have been ascertained with precision by mathematical calculation. The defendant has objected to the allowance of certain items on the ground that the plaintiffs have not proved what it would have cost them to build the bridge if there had been no delay, and what it actually did cost them to complete their work. The short answer to this argument is that the plaintiffs are not seeking to recover profits. They are attempting to gain indemnity for losses actually suffered as the result of defendant's conduct. They are entitled to recover these losses. United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168; Clarke Const. Co. v. United States, 7 Cir., 290 F. 192; General Contracting Corp. v. United States, 4 Cir., 70 F.2d 83; Foard v. Atlantic & N. C. Railroad Company, 53 N.C. 235, 78 Am.Dec. 277; Rocky Mount Mills v. Wilmington & W. Railroad Co., 119 N.C. 693, 25 S.E. 854, 56 Am.St.Rep. 682; Raleigh Iron Works Co. v. Lee County Cotton Oil Co., 192 N.C. 442, 135 S.E. 343; McCormick on Damages, § 165; Patterson, Builder's Measure of Recovery for Breach of Contract, 31 Col.L.Rev. 1286. They may also recover reasonable expenses incurred in attempting to secure proper performance of the contract and in trying to minimize the injuries due to defendant's breach. Rocky Mount Mills Co. v. Wilmington & W. Railroad Co., supra; Foard v. Atlantic & N. C. Railroad Co., supra; Harper Furniture Co. v. Southern Express Co., 148 N.C. 87, 62 S.E. 145, 30 L.R.A.,N.S., 483, 128 Am.St.Rep. 588; Pendergraph v. American Ry. Express Co., 178 N.C. 344, 100 S.E. 525; Riley v. Carpenter, 143 N.C. 215, 55 S.E. 628; Jones & Co. v. Sanford, 163 La. 799, 112 So. 726. Restatement of Contracts, § 336.

In addition to the items of damage thus mathematically ascertained, the District Court, as we have seen, allowed the following items of damage which were necessarily estimated, that is, additional overtime, losses from inefficiency of labor due to defendant's irregular shipments of piles in May, July and August, and ownership expense.

■■ There is no doubt that additional overhead expense is a proper element of damages. General Contracting Corp. v. United States, 4 Cir., 70 F.2d 83; Portland Pulley Co. v. Breeze, 101 Or. 239, 199 P. 957; Clarke Const. Co. v. United States, 7 Cir., 290 F. 192; Patterson, Builder's Measure of Recovery for Breach of Contract, 31 Col.L.Rev. 1286; McCormick on Damages, § 165. The defendant, however, contends that the methods of computing the additional overhead expense used in these cases do not clearly reflect the losses caused by its breach. This objection must fail. In the Loving case, the loss was ascertained in the following manner: The entire overhead for the year ending October 31, 1938, was found, including salaries of officers and clerical employees, rent, telephone and telegraph expenses, dues and subscriptions, insurance, legal and auditing costs, office supplies and other miscellaneous items. Amounts expended in promotional work and cultivation of good will were not allowed. The percentage of the overhead to the total value of contracts completed in the year was then found. This figure, which turned out to be 2.524935%, was then applied to the value of the Albemarle Bridge contract, divided by 365 to get the daily cost, and then multiplied by 172 to find the overhead expense attributable to the bridge contract during the 172 days added to the construction period by the defendant's breach. A similar method was adopted in the Tidewater case, except that the total monthly expenditures upon contracts were used instead of yearly values. The method adopted by the Master in the Loving case was substantially that which had been approved by federal taxing authorities in allowing deductions for income tax purposes on the returns of the Loving Company.

---

[11] Note 8, supra.
[12] Note 4, supra.
[13] Note 6, supra.
[14] Note 6, supra.

The additional overhead expenses, thus computed, were properly allowed.

■ ■ It was found that the defendant's irregular methods of shipment disorganized plaintiffs' working forces, and caused loss in efficiency of day labor until enough piles had arrived to allow steady work. In the Loving case, damages equal to fifteen per cent of the pay roll between May 2 and August 21, 1937, were awarded on this account. In the Tidewater case, similar damages were awarded for the period from May 5 to August 31, 1937.[15] Increased labor costs due to the delay caused by a breach of contract are a proper element of damages. E. A. Steininger Const. Co. v. Bates, 159 Ark. 416, 252 S. W. 618; Uhrich Millwork v. J. B. Brewster Co., 124 Kan. 579, 261 P. 561; Harper Furniture Co. v. Southern Express Co., 148 N. C. 87, 62 S.E. 145, 30 L.R.A.,N.S., 483, 128 Am.St.Rep. 588; Raleigh Iron Works Co. v. Lee County Cotton Oil Co., 192 N. C. 442, 135 S.E. 343; Rawls v. Atlantic Coast Line R. Co., 173 N.C. 6, 91 S.E. 367; Rocky Mount Mills v. Wilmington & W. Railroad Co., 119 N.C. 693, 25 S.E. 854, 56 Am.St.Rep. 682. The defendant argues that the amount of the injury has not been proved with sufficient certainty. It is true that the allowance of fifteen per cent was an estimate based upon the opinion of expert witnesses. But the law does not require absolute exactness. Where substantial injury has been suffered, redress will not be denied because its precise limits cannot be ascertained. No higher degree of certainty is required than the nature of the case admits. If a satisfactory conclusion, which would satisfy the mind of a reasonable man, is reached, that is sufficient. Cary v. Harris, 178 N.C. 624, 101 S.E. 486; Uhrich Millwork v. J. B. Brewster, 124 Kan. 579, 261 P. 561; Nance v. Western Union Telegraph Co., 177 N. C. 313, 98 S.E. 838; Williston on Contracts, 1937 Ed., § 1345.

The last item of damages allowed by the District Court in each case for the delay of the defendant in deliveries was designated ownership expense by the Special Master. This amounted to $10,420.81 in the Tidewater case, and $21,677.72 in the Loving case. We refer first to the Tidewater case in which the elements entering into this item were more clearly and definitely set forth and proved. The evidence showed as to each article of equipment maintained by the contractor on the job the fair value of the article, the extra time in months that it was kept on the job, and the expense per month figured in a percentage of the value; and the total expense for each article was shown by the evidence, including definitely calculated amounts for depreciation, interest, insurance, taxes and maintenance.

■ The defendant offered no countervailing evidence. It contends, however, that the total expense thus calculated was not properly chargeable to it as damages, but merely represented the cost of ownership that the contractor would have had to bear irrespective of the delay in the delivery of materials. The evidence was to the contrary. The proof in each case was that the contractor was unable to engage in other large operations because its equipment was tied up at the bridge. Under such circumstances, ownership expense was properly allowable as a part of the damages under the North Carolina decisions. See Champion Fibre Co. v. Hardin, 172 N.C. 767, 90 S.E. 919; Sharpe v. Southern Railway Co., 130 N.C. 613, 41 S. E. 799; see, also, Prudence Co. v. Fidelity & Deposit Co., 297 U.S. 198, 206, 207, 56 S.Ct. 387, 80 L.Ed. 581; Trainor Co. v. Ætna Casualty Co., 290 U.S. 47, 55, 54 S.Ct. 1, 78 L.Ed. 162; United States v. Wyckoff Co., 271 U.S. 263-267, 46 S.Ct. 503, 70 L.Ed. 938; Clarke Construction Co. v. United States, 7 Cir., 290 F. 192; General Contracting Corp. v. United States, 4 Cir., 70 F.2d 83; Patterson on Builder's Measure of Recovery for Breach of Contract, 31 Columbia Law Review, 1286.

In Brown v. East Carolina Railroad Co., 154 N.C. 300, 70 S.E. 625, the court allowed as damages for breach of contract the rental value of equipment kept idle by failure to deliver materials. The gen-

---

[15] The Special Master and the District Judge both refer to this item as the inefficiency of straight-time employees. Such a designation is erroneous. The plaintiffs sought to recover under this head of damages only losses incurred by the inefficiency of day labor. They expressly excluded amounts paid to straight-time employees from the pay roll figures to which the fifteen per cent ratio was applied. Therefore, this item should be termed the inefficiency of day labor, and is not deemed open to objection on the ground of duplication of damages.

eral rule was reiterated that damages may be ascertained on the basis of ownership expense, but it was said that rental value affords a better basis for the ascertainment of damages when it is definitely shown that rental value exists and has been lost through breach of contract. Evidence as to the rental value of the equipment in the pending cases was offered by the contractors. It tended to show a greater loss than the calculations based on ownership expense, but the Special Master adopted the latter basis. Obviously the defendant has no cause to complain on this account.

The Special Master subjected each element of ownership expense in the Tidewater case to careful scrutiny and rejected certain elements based on estimates when exact figures showing actual costs were in the contractor's possession. As we have stated, there was no contervailing evidence, and the finding of the court as to this item of expense in the Tidewater case must be affirmed.

The Loving case stands on a different footing, and in our opinion the total item of ownership expense should not be upheld. The contractor in this case claimed the sum of $23,320.84 for ownership expense on equipment valued at $70,560. The bridge equipment was estimated to have a value of $59,560 and the expense for a delay of 172 days was calculated to be $20,137.76. The pile driver equipment was estimated to be worth $11,000, and the expense for delay of 117 days $3,183.08, or a total for both kinds of equipment of $23,320.84. The testimony showed, somewhat vaguely, that in making these estimates depreciation, upkeep, maintenance, taxes and interest were taken into account. But the witnesses made no attempt to allot a definite portion of the expense to any one of these categories. Indeed the evidence consisted entirely of opinions or estimates of the total expense for each article of equipment, without any disclosure of how the witness made his calculations or reached the stated results. There was no testimony to the contrary, and no cross-examination on the point, and consequently the District Court felt justified in accepting the estimates in the main, merely reducing the total allowance for ownership expense to the sum of $21,667.72.

Notwithstanding the testimony tending to sustain the finding, we are of the opinion that it was clearly excessive and should not be allowed to stand in toto. See Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The Special Master had before him, when he made his finding, the evidence in the very similar Tidewater case, in which the calculations were definite and in detail. Equally satisfactory proof could have been secured and should have been required in the Loving case during the course of a trial which extended over many days. A comparison of the allowance of damages in the Tidewater case with that in the Loving case clearly shows that in the latter the allowance was extravagant. When proper adjustments are made in order to obtain a common basis for comparison in the two cases, and taking into consideration the value of each article of equipment, and the period of delay during which it was retained on the work on account of the defendant's breach, the calculation shows that in the Tidewater case the monthly allowance of damages was 3.84% of the total value of the equipment, while the corresponding figure in the Loving case was 5.637%. This discrepancy demonstrates that the damages allowed in the Loving case were excessive, especially when it is borne in mind that the character of equipment used by the two contractors was substantially similar. A reversal and a remand for a new trial in the Loving case would therefore be justified; but the litigation has been long drawn out and expensive, and substantial justice will be done if the allowance for damages in the two cases is placed upon a comparable basis. The defendant will be benefited by a reduction in damages, notwithstanding its failure to render assistance on this point in the District Court; and the plaintiff will be given the option to accept substantial damages, unless it prefers a reversal of the present judgment and a new trial. See Mullins Lumber Co. v. Williamson & Brown L. & L. Co., 4 Cir., 255 F. 645; Ætna Ins. Co. v. Norris Bros., 4 Cir., 109 F.2d 172; Becker Bros. v. United States, 2 Cir., 7 F.2d 3; Chesbrough v. Woodworth, 6 Cir., 221 F. 912; United States Potash Co. v. McNutt, 10 Cir., 70 F.2d 126; United States v. Utah-Idaho Sugar Co., 10 Cir., 96 F.2d 756; United States v. Brookridge Farm, 10 Cir., 111 F.2d 461; American Surety Co. v. Standard Asphalt Co., 5 Cir., 75 F.2d 1; see, also, Dimick v. Schiedt. 293

U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150.

The judgment in the Loving case will therefore be reversed and the case remanded for a new trial confined to the amount of damages for ownership expenses, unless the appellee shall file with the clerk of the District Court a remittitur in the sum of $6,929.05 within thirty days after the filing of this opinion, the costs in this court to be divided.

Case No. 4737 reversed nisi.

Case No. 4738 affirmed.